**UNIVERSAL HEALTH SERVICES, INC.; RCW of Edmond, Inc.; Renaissance Women's Center of Austin L.L.C.; and Renaissance Women's Center of Austin, L.P., Appellants,**

v.

**Margaret THOMPSON, M.D.; Linda Litzinger, M.D.; Donna Hurley, M.D.; Melanie Collins, M.D.; Sherry Neyman, M.D.; Laura Meritt, M.D.; Byron Darby, M.D.; and Renaissance Women's Group, P.A., Appellees.**

No. 03–00–00052–CV.

Court of Appeals of Texas, Austin.

July 13, 2000.

Released for Publication Aug. 31, 2000.

574

Roy Q. Minton, Minton, Burton, Foster & Collins, P.C., Austin, for Universal.

Mary Schaerdel Dietz, Marcy Hogan Greer, Fulbright & Jaworski, L.L.P., Austin, for Appellants.

R. James George, Jr., Patrick L. Reznik, George & Donaldson, L.L.P., Austin, W. Amon Burton, Jr., Austin, for Appellees.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

BEA ANN SMITH, Justice.

This dispute grows out of a good idea that proved financially disappointing. Certain corporate investors contracted with a group of Austin gynecologists and obstetricians to open a unique medical facility housing a hospital, clinic, and doctors' offices, all dedicated to women's health care needs. Appellants are "the Investors" who owned and operated the facility; appellees are "the Doctors" who located their offices in the facility and sent their patients to its hospital. When the facility continued to lose money, the Investors decided to close the hospital. The Doctors responded by suing for breach of contract and fraud and seeking a temporary injunction to prevent the Investors from closing the hospital pending a trial on the merits, which is scheduled for August 7, 2000. The trial court granted the Doctors' application for a temporary injunction. In eight points of error, the Investors bring this consolidated, interlocutory appeal challenging both the order granting the injunction and a subsequent order denying their motion to dissolve the injunction.[1] We will affirm both orders.

## BACKGROUND

In 1995, the Investors[2] approached Margaret Thompson and Linda Litzinger, doctors specializing in obstetrics and gynecology, with the concept of a multi-service women's health care center to be known as Renaissance Women's Center of Austin (the Center). The two-story facility would offer a women's hospital on the first floor and physicians' offices and a clinic on the second floor. Thompson and Litzinger decided to commit to the project and on October 11, 1995, entered into a lease and letter agreement (the Agreement) with the Investors memorializing their commitment

1. A party may appeal from a district court's interlocutory order granting a temporary injunction or overruling a motion to dissolve a temporary injunction. See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (West Supp. 2000).

2. Initially, Renaissance Centers for Women, Inc., an Oklahoma based corporation, approached the Doctors with the concept for a women's health care facility. That corporation was subsequently acquired by another corporation, RCW of Edmond, Inc. (RCW).

RCW then created a limited partnership, Renaissance Women's Center of Austin, L.P., for the purpose of developing the proposed facility in Austin. After the facility was completed, a limited liability corporation, Renaissance Women's Center in Austin, L.L.C., was formed to own and operate the first floor hospital. The limited partnership retained ownership of the second floor doctors' offices. For the sake of convenience, we refer to all of these entities collectively as the Investors.

to the contemplated Center.[3] The Agreement provides in relevant part:

> 5. Renaissance shall use reasonable efforts to obtain, and maintain in full force and effect throughout the Term of the Lease, written agreements ... certifying the Project as an approved hospital by all health insurance companies, health maintenance organizations, health care plans or other health care benefit providers ... for which [the Doctors] are approved providers.
>
> . . . .
>
> 8. This letter agreement shall remain in effect and binding on Renaissance and [the Doctors] throughout the term of the Lease. In the event of any conflict or inconsistency between the provisions of this letter agreement and the provisions of the Lease, the provisions of this letter agreement shall govern and control.
>
> . . . .
>
> 9. Each of Renaissance and [the Doctors] agree to act reasonably and in good faith in all of the matters which require the cooperation, approval or joinder of these parties under the provisions of this letter agreement.[4]

The Investors built a two-story building to house the facility, and the Center opened on September 7, 1997.

Throughout its operation, the Center suffered serious financial losses, allegedly due in part to managed care companies' low reimbursement levels for women's medical procedures. In late 1999, the Investors decided to close the hospital. Upon learning of the Investors' intention, the Doctors filed a lawsuit on December 10, pleading breach of contract and fraud.

The Doctors claimed in part that the Investors had breached paragraph five of the Agreement by failing to use reasonable efforts throughout the term of the lease to certify the Center as a hospital approved by all insurance companies and health maintenance organizations for which the Doctors are approved providers. The Doctors also sought a temporary and a permanent injunction to prevent the closing of the Center. In their request for a temporary injunction, the Doctors claimed that they "have and are suffering harm and irreparable harm as a result of the actions of [the Investors]" and sought to enjoin the Investors "from closing the hospital, selling the hospital, reducing the hospital staff or nurses, or reducing the quality of women's health care services" during the pendency of the suit.

Following a hearing, the trial court granted the temporary injunction. In support of its decision, the court made the following findings: (1) the Doctors have a probable right of recovery; (2) the Doctors will suffer imminent, irreparable harm in the absence of the injunction; (3) the Doctors have no adequate remedy at law for their interim damages, and their financial damages will be immeasurable; and (4) the balance of hardships *and the public interest* favors an injunction maintaining the status quo. Until judgment is rendered in the pending suit, the Investors are enjoined from closing the hospital or changing its status from the women's health care hospital that was in operation as of the date the Doctors filed their petition. The trial court further ordered the Investors to "continue to use reasonable efforts to obtain, and maintain in full force and effect ... written agreements certifying the hos-

**3.** Although Thompson and Litzinger were the only two doctors involved at this stage of the Center's development, the 1995 letter agreement and all subsequent agreements were binding on any of the physicians employed by them, including all the doctor appellees.

**4.** The parties subsequently entered into a Second Agreement and a Second Modification and Ratification of Lease Agreement. The primary purpose of these agreements was to reflect subsequent name changes of the parties and to affirm their respective interests and obligations. The Second Modification and Ratification of Lease Agreement also acknowledged the Investors' satisfaction of certain obligations under the 1995 Agreement.

pital ... as an approved hospital by all health care insurance companies, health maintenance organizations, health care plans or other health care benefit providers for which [the Doctors] are approved providers." Having lost at the hearing, the Investors filed a motion to dissolve the temporary injunction based on fundamental error and changed circumstances. The trial court denied the motion. The Investors now appeal both the trial-court order granting the temporary injunction and the order refusing to dissolve it.

## DISCUSSION

### Standard of Review

■ The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993). In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. *See id.* The decision to grant or deny the injunction lies within the sound discretion of the court, and we will not reverse that decision absent a clear abuse of discretion. *See id.* This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *See id.; Texas Indus. Gas v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 532 (Tex.App.—Houston [1st Dist.] 1992, no writ). Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *See CRC–Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ). We cannot reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision. *See id.*

An applicant requesting a temporary injunction is not required to establish that she will prevail at trial. *See Walling*, 863 S.W.2d at 58. The applicant's burden is to establish a probable right of recovery following a trial on the merits and a probable injury in the interim, warranting preservation of the status quo pending the trial. *See id.* at 57.

### Mandatory or Prohibitive Injunction

■ As a preliminary matter, the Investors argue that although the temporary injunction is couched in terms of prohibiting them from closing the hospital, the order is really mandatory in nature because it requires the Investors to seek funding to keep the hospital open. A mandatory injunction, urge the Investors, should be denied unless the right to relief is clear and compelling and a case of extreme necessity or hardship is presented. *See Rhodia, Inc. v. Harris County*, 470 S.W.2d 415, 419 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

■ A mandatory injunction requires conduct from a party, whereas a prohibitive injunction forbids conduct. *See LeFaucheur v. Williams*, 807 S.W.2d 20, 22 (Tex.App.—Austin 1991, no writ). The primary function of the trial court's order here is to forbid the Investors from closing the hospital or changing its status. The order does not include any provisions mandating the Investors to seek funding for the hospital, nor did the Doctors request such relief. If the effect of the order implies that the Investors must seek funding, this implication is only incidental to the order's primary function of preventing the Investors from closing the hospital, and we will not presume such an order is mandatory. *See Woodward v. Smith*, 253 S.W. 847, 853 (Tex.Civ.App.—Austin 1923, no writ). We hold that the trial court's temporary injunction is prohibitive; its ordering provisions are preventive in nature and necessary for the preservation of the status quo.

### Preserving the Status Quo

■ The Investors further contend that because the order requires that they

take some affirmative action, it disturbs the status quo. Status quo is defined as "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953) (internal quotations omitted). "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). If it were otherwise, the granting of an injunction would be rendered impossible. *See id.*

We hold that the trial court's temporary injunction preserves the status quo by ordering that operations continue as they existed *prior* to the Investors' attempt to close the hospital. It was the Investors' decision to close the hospital that altered the parties' relationship. This dispute arises from the attempted closing. Therefore, the status quo is the relationship of the Investors and the Doctors as it existed prior to the Investors' decision to close the hospital.

**Probable Right to Recovery, Irreparable Harm, Adequate Remedy, Balancing Equities**

In their second, third, and fourth points of error, the Investors complain that the court abused its discretion in granting the temporary injunction because the Doctors failed to prove a probable right of recovery, irreparable harm, and the absence of an adequate remedy at law. In their fifth point of error, the Investors complain that the trial court erred in balancing the equities in favor of the temporary injunction.

■■■ To establish a *probable right to recovery*, the Doctors must have a cause of action for which they may be granted relief. *See Walling*, 863 S.W.2d at 58; *Surko Enter., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 225 (Tex.App.—Houston [1st Dist.] 1989, no writ) (probable right to recovery includes element of wrongful conduct). *Irreparable harm* is an element of the probable injury requirement that the Doctors must satisfy in order to obtain a temporary injunction. *See Surko Enter.*, 782 S.W.2d at 225 (probable injury includes elements of imminent harm, irreparable injury, and no adequate remedy at law). To demonstrate probable injury or harm, an applicant must show an injury for which there can be no real legal measure of damages or none that can be determined with a sufficient degree of certainty, *i.e.*, a noncompensable injury. *See Texas Indus. Gas*, 828 S.W.2d at 533; *Martin v. Linen Sys. for Hosps., Inc.*, 671 S.W.2d 706, 710 (Tex.App.—Houston [1st Dist.] 1984, no writ) (examples of noncompensable injuries include company's loss of clientele, goodwill, marketing techniques, and office stability). An *adequate remedy at law* is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief. *See Texas Indus. Gas*, 828 S.W.2d at 532; *Surko Enter.*, 782 S.W.2d at 225 (quoting *Ballenger v. Ballenger*, 694 S.W.2d 72, 76 (Tex. App.—Corpus Christi 1985, no writ)).

The record before us does not include specific findings of fact and conclusions of law. Therefore, we will uphold the trial court's judgment on any legal theory supported by the record, indulging all reasonable presumptions in favor of there having been sufficient evidence to sustain the trial court's judgment. *See Martin*, 671 S.W.2d at 708–09.

■■■ Here, the wrongful conduct alleged was a breach of contract.[5] This claim rests on the Investors' alleged fail-

---

5. The Investors also argue that injunctions are not appropriate remedies for breach of contract claims because money damages are sufficient to compensate for these claims. The supreme court addressed this issue in *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993), in which it held that a trial court may grant a temporary injunction to preserve the status quo even though the cause of action is for damages resulting from breach of contract and does not request equitable relief.

ure to use reasonable efforts to maintain written agreements with insurance companies and health maintenance organizations. The evidence adduced in support of the wrongful conduct included the 1995 Agreement. Based on the Doctors' cause of action for breach of contract and the evidence adduced to sustain it, we hold the trial court did not abuse its discretion in finding that the Doctors had a probable right to recovery.[6]

The Doctors also adduced evidence of irreparable harm for which there is no adequate remedy at law. The Doctors' burden was to show that an award of damages would be inadequate for the harm suffered; they were not required to show that an award of damages would be wholly ineffectual. *See Walling,* 863 S.W.2d at 58 ("Simply because the applicant ... asks only for damages as ultimate relief does not guarantee that damages are completely adequate as a remedy."); *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 386 (7th Cir.1984). An award of damages may be deficient if the nature of the Doctors' losses makes damages difficult to calculate. *See Roland Mach. Co.,* 749 F.2d at 386. The trial court's order reflects that if the hospital were to close or change its status from a women's health care hospital, the Doctors would be unable "to provide to their pregnant mothers the care that they now receive and expect [or] to ensure the utmost safety of those mothers upon the delivery of their babies."

One of the witnesses, Dr. Thompson, noted two instances where the ability of the Doctors to rush the patients downstairs to the hospital within minutes possibly saved the lives of the babies being delivered. The Doctors also provided some evidence that other area facilities may not have the capacity to accommodate all of the Center's patients.[7] This evidence was sufficient for the trial court to conclude that the Doctors would likely suffer irreparable injury and that the nature of the Doctors' and their patients' losses would make damages incapable of calculation.

The Investors also complain that the district court erred in considering Universal Health Services' financial status in balancing the hardships and concluding that the equities weighed in favor of granting the temporary injunction.[8] In considering an application for a temporary injunction, a trial court "balances the equities of the parties and the resulting conveniences and hardships." *Surko Enter.,* 782 S.W.2d at 225. The trial court here balanced the hardship to the Doctors, as well as the public interest of the patients and their babies, against the hardship to the Investors in maintaining the status quo until August 7, the date set for the trial. In doing so, the court noted that over 1000 babies were scheduled to be delivered during the eight months before the trial. The court also acknowledged some evidence that other area facilities may not be adequately equipped to handle

---

6. Our decision on this point is not a reflection on the merits of the case. We merely examine the evidence through the filter of an abuse of discretion standard in upholding the trial court's decision.

7. The Investors claim that because subsequent evidence conclusively disproved the Doctors' evidence of lack of capacity in area hospitals, the court erroneously relied on lack of capacity as a basis for the temporary injunction. However, the Investors did not produce the subsequent evidence regarding existing hospital capacity during the hearing on the application for a temporary injunction. They presented the evidence at the hearing on the motion to dissolve the temporary injunc-

tion. As we discuss later, the trial court was under no duty to revisit the validity of its order granting the temporary injunction absent changed circumstances or fundamental error.

8. Universal Health Services, along with other shareholders, incorporated RCW of Edmond, Inc. (RCW). RCW currently manages the hospital on the first floor of the Center. The Investors argue that because Universal is only one investor in the hospital, owns neither the land nor the building that houses the Center, and was not a party to any of the agreements, the court should not have considered Universal's balance sheets in balancing the equities.

the delivery and care of all of those babies. The trial court based its decision to maintain the status quo on the health risks involved if the hospital were closed. Indeed, the court's order states, "Maintaining the status quo of the hospital as the Renaissance Women's Center as a women's hospital will ensure that the quality of care these mothers and their babies expect to receive will not be compromised. The equities are balanced in favor of the [Doctors] *because of the risks involved in closing the hospital.*" (Emphasis added.) While there were no doubt equities on both sides, we cannot say the trial court abused its discretion in balancing them in favor of the Doctors and their patients.

Applying the appropriate standard of review and viewing the evidence in the light most favorable to the trial court's order, as we must, we hold that appellants have not shown that the trial court abused its discretion in granting the temporary injunction. Our holding is limited to whether the trial court abused its discretion in attempting to preserve the status quo until August 7, the scheduled date of the trial. We note that if the Doctors had lost on the motion for a temporary injunction, the Investors had closed the hospital, and the trial court later determined that the Investors had breached the terms of the Agreement, the remedy of compelling the Investors to comply for a while longer with the reasonable efforts mandated in the Agreement would no longer be viable. While the Investors may have presented conflicting evidence in support of their claim that they should not be required to continue operating the hospital or that they have used reasonable efforts in accordance with the Agreement, we will not address the merits of the Investors' defenses on this interlocutory appeal.

### Specificity of the Temporary Injunction

In its first and sixth points of error, the Investors argue that the trial court erred in granting an open-ended, over-broad injunction requiring the Investors to continue operations without specifying how the operations should be funded. The law in Texas regarding the specificity of temporary injunctions is that they must be

> as definite, clear and precise as possible and *when practicable* [they] should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956) (internal quotations and citations omitted).

The order before us enjoins the Investors "from closing the hospital at the Renaissance Women's Center, [or] changing the status of the hospital from the women's health care hospital that was in operation as of December 10, 1999, the date of the filing of Plaintiff's Original Petition, until judgment in this cause is rendered by this Court." The Investors are in the business of running hospitals and have been running this Center for almost three years. The trial court was not required to examine the specific details associated with running the hospital prior to December 10 in order to spell out what is necessary to maintain the status quo. A temporary injunction should not be greatly concerned with "rights of the defendants that are asserted largely in the abstract. Otherwise, it would probably take longer to write the decree than it would to try the case and the injunction might well become unintelligible and self-destructive." *Id.*; *see Wesware, Inc. v. State of Texas*, 488 S.W.2d 844, 849 (Tex.Civ.App.—Austin 1972, no writ). We overrule the Investors'

complaints that the order is unworkable because it does not sufficiently spell out the details of compliance.

**Reopening the Case**

In their seventh point of error, the Investors complain that the trial court erred in refusing to reopen the hearing on the application for a temporary injunction to allow more thorough exploration of the capacity of existing facilities to accommodate the Center's potentially displaced patients and their babies. Rule 270 of the Texas Rules of Civil Procedure provides: "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time...." Tex.R. Civ. P. 270. "The decision to re-open a case to admit additional evidence is within the trial court's sound discretion." *Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 245 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). We will not overturn a trial court's decision absent a clear abuse of discretion. *See id.*

The record before us reflects that the Investors produced Brian Blessing, a hospital administrator for the Center, as a witness. Blessing provided testimony indicating that Southwest Seton would have the capacity to accommodate between 800 and 1400 deliveries per year, thereby refuting the Doctors' evidence of insufficient capacity in the area hospitals. It was within the trial court's discretion to determine whether additional evidence regarding capacity was necessary to the due administration of justice. The court was under no duty to allow the Investors another opportunity to litigate the same issue prior to the trial on the merits. We cannot say that the trial court abused its discretion in refusing to reopen the evidence. The Investors' seventh point of error is overruled.

**Changed Circumstances and Fundamental Error**

In their final point of error, the Investors insist that the court erred in

denying their motion to dissolve the temporary injunction in light of newly discovered evidence, changed circumstances, and fundamental error. A determination of whether to dissolve a temporary injunction lies within the sound discretion of the trial court, and we will not overrule its determination absent an abuse of discretion. *See Tober v. Turner of Texas, Inc.*, 668 S.W.2d 831, 834 (Tex.App.—Austin 1984, no writ). A trial court may modify a temporary injunction because of fundamental error or changed circumstances but has no duty to reconsider the grant of a temporary injunction if the movant fails to present *new* evidence showing fundamental error or changed conditions. *See Henke v. Peoples State Bank*, 6 S.W.3d 717, 721 (Tex.App.—Corpus Christi 1999, pet. dism'd w.o.j.). The purpose of the motion to dissolve is "to provide a means to show that changed circumstances or changes in the law require the modification or dissolution of the injunction; the purpose is not to give an unsuccessful party an opportunity to relitigate the propriety of the original grant." *Tober*, 668 S.W.2d at 836.

Fundamental error exists when "the record shows the court lacked jurisdiction or that the public interest is directly and adversely affected as that interest is declared in the statutes or the Constitution of Texas." *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982). "Changed circumstances are conditions that altered the status quo existing after the temporary injunction was granted or that made the temporary injunction unnecessary or improper." *Henke*, 6 S.W.3d at 721.

The Investors argue that the trial court should have granted the motion to dissolve the temporary injunction because of new evidence they presented. The new evidence consisted of testimony from Laraine McIntyre, the Director of Women's Health Services for St. David's Hospital. McIntyre testified that St. David's Hospital has sufficient capacity to deliver the babies scheduled to be born at the Center

prior to the August 7 trial on the merits. This evidence, however, is not evidence of changed circumstances or of fundamental error. The Investors did not demonstrate how this evidence altered the status quo. Instead, McIntyre's testimony was merely additional conflicting evidence regarding the capacity of other hospitals to accommodate the Center's patients. The trial court did not abuse its discretion in denying the motion to dissolve when it was presented with additional conflicting evidence.

The Investors also argue that since the granting of the temporary injunction, the hospital's operating losses have increased. In their motion to dissolve, the Investors contend that the trial court did not clearly provide in its order how they should continue to fund the hospital operations. However, prior to the granting of the temporary injunction, the trial court was made aware of the hospital's operating losses. Upon balancing the equities, the trial court determined that a temporary injunction was necessary to preserve the status quo pending a trial on the merits. The Investors did not provide any new evidence of conditions that altered the status quo or revealed fundamental error. As we stated in *Tober*, the trial court has no duty to reconsider the validity of its original grant of the temporary injunction absent such new evidence. *See Tober*, 668 S.W.2d at 835. We overrule the Investors' final point of error.

## CONCLUSION

Having overruled all of the Investors' points of error and determined that the trial court did not abuse its discretion in granting the Doctors' application for a temporary injunction or in denying the Investors' motion to dissolve the temporary injunction, we affirm both trial-court orders.