# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00122-CV

**Westlake Surgical, L.P. d/b/a The Hospital at Westlake Medical Center, Appellant**

**v.**

**Karen Turner, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-07-001964, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from the trial court's denial of a request for injunctive relief filed by appellant Westlake Surgical, L.P. d/b/a The Hospital at Westlake Medical Center. Appellee Karen Turner is a registered nurse who worked for Westlake Surgical. After she was terminated in February 2007, she sued Westlake Surgical, alleging she was fired in retaliation for reporting, among other things, fraudulent billing, refusal to accept patients lacking insurance, improper care of potentially suicidal patients, and unlawful discharge of psychiatric patients. She alleged that the reasons given for her termination were mere pretense and sought reinstatement, back wages, exemplary damages, and attorney's fees. Westlake Surgical answered and filed a counterclaim for conversion and violation of the Texas Theft Liability Act (TTLA), *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (West 2005), alleging that when Turner was notified of her termination, she improperly copied or took about 3,000 pages of confidential patient records and information.

Westlake Surgical also filed a motion for a temporary injunction, asking that Turner be ordered to return all medical records in her possession, account for the interim whereabouts of all the documents, disclose to whom she had disclosed any of the information, and verify that all documents had been returned. Turner responded that she had copied documents she believed supported her claims of Medicare fraud and that she had not disclosed any information to anyone except attorneys she had consulted or hired. Following a hearing on the temporary injunction, the trial court denied Westlake Surgical's request but ordered the parties to try to agree on a protective order prohibiting the disclosure of the documents to third parties, other than to state or federal regulatory authorities or to expert witnesses. Westlake Surgical argues that the trial court erred in denying its motion for injunctive relief. We affirm the trial court's order.

**Background**

Turner worked for Westlake Surgical for more than a year. She alleged that in December 2006, she informed her supervisor that she was going to prepare a written report on violations she had observed and that she was informed about two weeks later that her employment was going to be terminated. Turner testified that her last day of employment was February 3, 2007, but that she was informed of her termination on January 3, shortly before she was to leave on vacation. After being told she was being fired, she bought an electronic storage device, returned to work, and copied the contents of her hard drive, which contained information she believed showed that Westlake Surgical was engaged in Medicare fraud. She said, "I downloaded everything from my computer, because I didn't know how to download—separate out and download specific things." She said "it was also late at night when I was getting ready to be out of the country beginning a day

and a half later." She did not believe any patient records were on her computer but said "[t]here were referrals to patient documents, patients' visits." Some of the documents included patients' names, but mostly they used "visit numbers." She also took her "working copies" of "patient face sheets"—physical copies from which she had worked on patients' cases. She said, "I wouldn't say they were patient records. I would say they were patient face sheets, demographic information." She said some of the documents contained "[m]inimal information" about patient care. Turner acknowledged that her employment by Westlake Surgical was governed by an employee handbook and confidentiality agreement that required her to protect the confidentiality and security of all hospital records. She testified that once she took the documents home, she kept them in a locked file cabinet, no one else had access to them, and she did not intend to disclose the information unless she prepared a report for Medicare. Michael Morton, Turner's supervisor, also testified at the hearing. He disputed much of Turner's testimony, stating that Turner never told him about improper billing, either verbally or in a written report. He denied that Turner told him she was going to report the hospital to Medicare and said she was terminated for poor performance. In affidavits attached to Westlake Surgical's motion for injunctive relief, Morton and Westlake Surgical's Director of Human Resources averred that, after her departure and upon the hospital's request, Turner returned some "confidential medical records and other protected health information" and said that those documents were the only confidential items she had in her possession.

**Standard of Review**

The issue in this case is whether the trial court erred in denying Westlake Surgical's requested temporary injunction. "A temporary injunction is an extraordinary remedy and does not

3

issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Although the applicant for a temporary injunction need not prove that it will prevail at trial, *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.), to be entitled to a temporary injunction, the party must plead and prove: (1) a cause of action against the opposing party; (2) a probable right to the sought relief; and (3) probable, imminent, and irreparable interim injury, *Butnaru*, 84 S.W.3d at 204. We will only reverse a trial court's decision to grant or deny a request for a temporary injunction if the court abused its discretion. *Butnaru*, 84 S.W.3d at 204. Our review of an order denying a temporary injunction is limited to considering the validity of the order and we may not substitute our judgment for that of the trial court or consider the merits of the lawsuit. *Thompson*, 24 S.W.3d at 576. We consider the evidence in the record in the light most favorable to the order, indulging all reasonable inferences in its favor, and determining whether the order was "so arbitrary as to exceed the bounds of reasonable discretion." *Id*. "We cannot reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision." *Id.* When, as here, the trial court does not make findings of fact or conclusions of law, we will uphold the order on any legal theory supported by the record. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).

### Discussion

Initially, we must note that Westlake Surgical did not include in the record examples of the information in Turner's possession, produce redacted copies of the records it seeks, or provide detailed descriptions about the kinds of information at issue. Although Westlake Surgical asserts that Turner took information about procedures, treatments, and "other medical records," Turner

4

testified that she would not characterize the "face sheets" as medical records and that she only copied information from her computer and took her working copies of "face sheets," which she had photocopied from originals in the course of her employment. She also explained that, although there were some references to health care, the information was largely demographic in nature. In his affidavit, Morton stated that about 650 of the 3,000 pages in question contained confidential medical information but did not describe the documents other than to refer to them by the Bates numbers assigned to them in Turner's response. Other than one document that Turner returned upon request after her termination, Morton testified that he could not identify any documents or information that Westlake Surgical did not also have in its possession. Thus, based on the conflicting evidence presented to the trial court, *see Thompson*, 24 S.W.3d at 576 (we consider evidence in light most favorable to order, indulging inferences and resolving conflicts in its favor), the court could have concluded that Turner had in her possession only copies and that Westlake retained possession of the same information.

Westlake Surgical's asserted claims are for conversion and violation of the TTLA. To be entitled to injunctive relief, Westlake Surgical had to plead and prove at least one of those causes of action and that it would be likely to prevail on one of those causes. *See Butnaru*, 84 S.W.3d at 204. To prevail on a conversion claim, "a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property." *Apple Imports, Inc.*

*v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, writ denied). The TTLA allows someone who has been damaged by another's theft to file a civil suit against the wrongdoer for actual damages and attorney's fees. Tex. Civ. Prac. & Rem. Code Ann. §§ 134.003-.005. Theft is defined as the unlawful appropriation of property with the intent to deprive the owner of the property. Tex. Penal Code Ann. § 31.03(a) (West Supp. 2008); *see* Tex. Civ. Prac. & Rem. Code Ann. § 134.001(2). As we have noted, Westlake Surgical did not establish that the information in Turner's possession is the type of property that can be the object of a conversion claim.[1] Further, because the "property" at issue is essentially information, and not a tangible item, Westlake would have had to show that

---

[1] Conversion cases that do not involve funds or tangible assets generally involve trade secrets improperly acquired by a competitor or a competitor's use of a client list in an attempt to poach the suing company's clients. *See, e.g.*, *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) (discussing whether discovery rule should apply to conversion suit based on competitor's use of source code); *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 219-20 (Tex. App.—Dallas 2005, no pet.) (employee was sued for conversion after he took client files and used information to start rival company); *Mabrey v. SandStream, Inc.*, 124 S.W.3d 302, 307-08 (Tex. App.—Fort Worth 2003, no pet.) (company sued for conversion, alleging defendants used trade secrets to start competing company); *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 23-24 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("a former employee may not use, for his own advantage and to the detriment of his former employer, confidential information or trade secrets acquired by or imparted to him in the course of his employment"; temporary injunction proper when appellants had appellee's confidential information and were "in a position to use it to compete directly with appellee" and it was "likely appellants will use the information to appellee's detriment"); *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756, 762 (Tex. App.—Texarkana 1996), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997) (defendant sold confidential client list but retained copy to start competing business); *Gonzales v. Zamora*, 791 S.W.2d 258, 262, 265 (Tex. App.—Corpus Christi 1990, no writ) (former employees were sued for conversion after they took "information forms" developed by plaintiff); *Chandler v. Mastercraft Dental Corp of Tex. Inc.*, 739 S.W.2d 460, 469 (Tex. App.—Fort Worth 1987, writ denied) (employee was sued for conversion after he started company using patterns and molds belonging to former employer); *see also IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 473-74 (Tex. App.—Amarillo 2001, pet. denied) (summary judgment improper because fact question existed as to "to (1) whether Klumpe obtained the Guides illegally, and (2) Klumpe's civil liability for his actions").

Turner intended to deprive Westlake Surgical of the information, *see* Tex. Penal Code Ann. § 31.03(a), or that she intended to use the information in a manner that excluded or was inconsistent with Westlake Surgical's rights, *see Apple Imports*, 945 S.W.2d at 899.

Westlake Surgical asserts that Turner took "medical records" and that it has a right of possession to the information contained in those records, citing *Deaton v. United Mobile Networks, L.P.*, 926 S.W.2d 756 (Tex. App.—Texarkana 1996), *rev'd in part on other grounds*, 939 S.W.2d 146 (Tex. 1997), to support its assertion that "documents containing confidential information are personal property that can be converted."[2] Westlake Surgical also cites to its confidentiality policy and to cases related to an employee's duty not to use confidential or proprietary information gained during employment to the employer's detriment. *See Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 888 (Tex. App.—Dallas 2003, no pet.). However, nurses have a duty to report what they believe to be violations of law by a hospital. *See* Tex. Occ. Code Ann. §§ 301.402, .4025 (West Supp. 2008) (provisions related to whistleblowing by nurses); Tex. Health & Safety Code Ann. § 161.132 (West 2001) (governing reporting of abuse, neglect, or unprofessional conduct by healthcare facility). Employers may not retaliate against an employee who acts in good faith

---

[2] In *Deaton*, the defendant sold the plaintiff a confidential client list for $450,000. 926 S.W.2d at 762. However, the defendant retained a copy and later used it to start a competing business, prompting the plaintiff to sue for conversion. *Id.* at 762-63. The court said, "When the taking of a copy deprives the company of the exclusive possession of the list or gives a competitor the advantage of having the list, this may damage or destroy the value of the asset. The taking of a *copy* can be the wrongful exercise of dominion and control over the information which is inconsistent with the true owner's rights." *Id.* at 763; *see also Chandler*, 739 S.W.2d at 469 ("Once Dayton Dental hustled Mastercraft's former customers and began using the exact molds and match plates and formulas used by Mastercraft, the rug of the company that Ross purchased was pulled out from under him. We hold therefore that the appellees did not have to prove a substantial element of secrecy in order to recover damages for conversion of trade secrets.").

7

under a whistleblower statute. *See* Tex. Occ. Code Ann. § 301.413 (West Supp. 2008); Tex. Health & Safety Code Ann. § 161.134 (West 2001); *see also* Tex. Health & Safety Code Ann. § 301.352 (West Supp. 2008) (nurse cannot be fired or suspended for refusal to perform act or omission that would violate statutes governing provision of nursing care).

We hold that Westlake Surgical has not shown Turner "deprived" it of information it did not already have, nor is there evidence that she is damaging or destroying the value of the information. There is no evidence to suggest that Turner has used or intends to use the information to compete against Westlake Surgical or indeed that she intends to use it for any purposes other than those within her rights as a whistleblower. Viewing the record in the light most favorable to the trial court's ruling, the copies of documents in Turner's possession are valuable only insofar as they contain basic patient information. Turner alleges that the information is necessary to prove that Westlake Surgical engaged in Medicare fraud and other misconduct. Although her intended use of the documents is contrary to Westlake Surgical's interests, that contrary use through reporting to licensing authorities is mandated by law, and Westlake Surgical cannot shield itself from liability for alleged misconduct by claiming that the records are confidential and cannot be disclosed. Indeed, the disclosure of confidential healthcare information is not a violation of the Health Insurance Portability and Accountability Act (HIPAA) if done by a whistleblower in good faith. *See* 45 C.F.R. § 165.502(j)(1) (no HIPAA violation if whistleblower (1) has good faith belief that hospital has acted unlawfully or in violation of professional standards or that one or more patients is at risk due to care being provided and (2) discloses protected health information to attorney or public health authority). We cannot hold that the trial court abused its discretion if it determined that Westlake Surgical had not sufficiently shown it had a probable right to recovery under either of its asserted causes of action.

8

Similarly, the trial court could have determined that Westlake Surgical had not shown that it stood to suffer imminent, irreparable harm. Although Westlake Surgical insists it could be subject to liability under HIPAA for Turner's disclosure of information, HIPAA protects the hospital from liability because Turner has disclosed the information only to her own attorney and to Westlake Surgical's attorney in response to a discovery request, believing it to be evidence of Medicare fraud or violations of professional standards, and the only other possible disclosure will be to an appropriate oversight agency in the context of a report about alleged fraud or other misconduct. *See id*. Thus, other than the possibility of having alleged misconduct brought to light, we see no indication that Westlake Surgical will suffer irreparable harm if the injunction does not issue.

### Conclusion

Based on this record, the lack of information about the information or records in question, and the conflicting testimony, Westlake Surgical has not shown that the trial court abused its discretion in refusing to grant the requested temporary injunction. We affirm the trial court's order.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Puryear and Pemberton;
   Chief Justice Law Not Participating

Affirmed

Filed: August 7, 2009