# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00597-CV

**Public Utility Commission of Texas; Peter Lake, Chairman; Will McAdams, Commissioner; Lori Cobos, Commissioner; and Jimmy Glotfelty, Commissioner, each in his or her Official Capacity at the Public Utility Commission of Texas, Appellants**

**v.**

**AMA Communications, LLC d/b/a AMA TechTel Communications, Appellee**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-004498, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The Public Utility Commission of Texas (the PUC) and Peter Lake, Chairman; Will McAdams, Commissioner; Lori Cobos, Commissioner; and Jimmy Glotfelty, Commissioner, in their official capacities (collectively, the PUC Parties), appeal from the trial court's orders (1) denying their plea to the jurisdiction and (2) granting the petition of appellee AMA Communications, LLC d/b/a AMA TechTel Communications (AMA) for a temporary injunction. For the following reasons, we affirm the trial court's orders.

## BACKGROUND

This case concerns the Texas Universal Service Fund (TUSF),[1] which was established by the legislature to provide universal affordable telecommunications services across

---

[1] The regulatory and historical background of the TUSF has been recounted in detail in a recent opinion of this Court and will not be repeated here, as the parties are well familiar with it, except

the state, and which the legislature has directed the PUC to fund and administer. *See* Tex. Util. Code §§ 52.001(a), 56.021, .022(a). The TUSF includes programs that provide financial support to assist telecommunications providers with supplying basic local services at reasonable rates in high-cost and rural areas. *See* 16 Tex. Admin. Code § 26.420(b)(1)-(2) (2022) (Pub. Util. Comm'n of Tex., Administration of Texas Universal Service Fund (TUSF)). Among other duties, the PUC is mandated to "adopt eligibility criteria and review procedures, including a method for administrative review," necessary for funding TUSF and making distributions to eligible providers, Tex. Util. Code § 56.023(a)(1); "determine which telecommunications providers meet the eligibility criteria," *id.* § 56.023(a)(2); and "approve procedures for the collection and disbursal of the revenue of" TUSF, *id.* § 56.023(a)(5).

AMA is a telecommunications provider whose coverage area includes more than 25,000 square miles, largely in rural west Texas. It offers phone and internet service to rural Texas and is a competitive local exchange carrier (CLEC) that competes with incumbent local exchange carriers (ILECs)[2] in the areas it serves, providing customers an alternative to ILECs and thus a choice in their telecommunications provider. As a CLEC, AMA operates under a Service Provider Certificate of Operating Authority (SPCOA) and is regulated differently than ILECs. It is nonetheless qualified to receive funds from TUSF as an "eligible telecommunications provider" (ETP), having met a lengthy list of obligations designated by statute and rule. *See* Tex. Util. Code §§ 52.151–.156 (Public Utility Regulatory Act (PURA)

---

where necessary to frame the issues. *See Texas Tel. Ass'n v. Public Util. Comm'n*, No. 03-21-00294-CV, __ S.W.3d __, 2022 WL 2374875, at \*2–3 (Tex. App.—Austin June 30, 2022, no pet. h.) (*TTA*); *see also* Tex. R. App. P. 47.4 (providing for issuance of memorandum opinions).

[2] Unlike AMA, the rural providers who filed the lawsuit we addressed in our recent *TTA* opinion are ILECs. *See TTA*, 2022 WL 2374875, at \*3.

sections applicable to SPCOAs); 16 Tex. Admin. Code § 26.417 (2022) (Pub. Util. Comm'n of Tex., Designation as Eligible Telecommunications Providers to Receive Texas Universal Service Funds (TUSF)) (providing requirements for designation as ETP).

ILECs receive a certain amount of monetary support per customer from the PUC as determined through a final order issued after a contested-case proceeding. *See* 16 Tex. Admin. Code § 26.403(e)(1)–(3) (2022) (Pub. Util. Comm'n of Tex., Texas High Cost Universal Service Plan (THCUSP)). Under the "identical support rule," if a customer switches from an ILEC to a qualified CLEC like AMA, the support follows the customer to the CLEC. *See id.* § 26.403(e)(4). Accordingly, AMA receives a fixed amount of per-line support when it provides basic local telecommunications services to customers in supported high-cost rural exchanges. Thus, the amount AMA receives per telecommunications line is not set through a contested case but only by a PUC order of support for the ILEC, and AMA has no mechanism to affect the amount of per-line support available in an area and must incorporate the per-line support amounts in its business plan when making decisions about where to invest. According to AMA's undisputed evidence, it has invested tens of millions of dollars in infrastructure to become an ETP and in reliance on the per-line support established by PUC order.

In August 2021, AMA filed against the PUC Parties a verified original petition and application for declaratory judgment, mandamus relief, a temporary restraining order, temporary and permanent injunctive relief, and compensation. AMA alleged that although previously it had fully funded its obligations to AMA and similar entities at PUC-ordered levels and maintained TUSF solvency, the PUC "recently broke from its precedent" and began paying "pennies on the dollar from what it ordered and the Legislature required—to the tune of millions of dollars." AMA alleged that the PUC Parties implemented the underpayment scheme through

3

their "behind-the-scenes contract amendment with [their TUSF] administrator, Solix Inc., to establish a hierarchy of payments that would be made to various program recipients from what was left of the dwindling Fund." AMA alleged that the PUC Parties' actions were ultra vires and constituted unconstitutional regulatory takings. They sought (1) compensation for the unlawful takings; (2) a writ of mandamus ordering the PUC Parties to adequately fund all TUSF programs and make all required disbursements; (3) temporary and permanent injunctive relief ordering the PUC Parties to desist from operating under the contract amendment, to reinstate full and timely distribution of support to which AMA is entitled under the PUC's orders, and to ensure the TUSF is fully funded; (4) declaratory judgments that the contract amendment is void because it violates rulemaking requirements of the Administrative Procedure Act (APA), *see* Tex. Gov't Code § 2001.038, and AMA's due-process rights, *see* Tex. Util. Code § 56.031 ("The commission may revise the monthly per line support amounts to be made available from the Texas High Cost Universal Service Plan after notice and an opportunity for hearing."); and (5) attorney's fees under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code § 37.009.

The PUC Parties filed a plea to the jurisdiction, and the trial court conducted a joint hearing on the plea and AMA's application for a temporary injunction on November 9, 2021. The trial court issued a temporary injunction on November 17 and denied the PUC Parties' plea to the jurisdiction the following day. The temporary injunction recited the trial court's findings that (1) without injunctive relief AMA would suffer irreparable harm, (2) AMA was likely to succeed on the merits of its claims, and (3) injunctive relief would preserve the "last actual peaceable uncontested status that preceded the controversy before the court." It ordered the PUC Parties, beginning December 1, 2021, to pay AMA "the full amount of financial

4

support that [it] is owed each month under the [applicable] rate orders [the PUC Parties] have executed." The PUC Parties perfected this interlocutory appeal of the trial court's temporary injunction and order denying their plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), (8).

## DISCUSSION

In this Court's recent *TTA* case, the plaintiffs (Rural Providers) challenged the same actions of the PUC Parties that AMA challenges here and brought the same types of claims that AMA brings here—ultra vires, regulatory takings, and APA rulemaking.[3] *See Texas Tel. Ass'n v. Public Util. Comm'n*, No. 03-21-00294-CV, __ S.W.3d __, 2022 WL 2374875, at *6 (Tex. App.—Austin June 30, 2022, no pet. h.) (*TTA*). In that case, the trial court granted the PUC Parties' combined plea to the jurisdiction and cross-motion for summary judgment and implicitly denied the Rural Providers' summary-judgment motion by dismissing the case. This Court reversed the trial court's dismissal of the Rural Providers' claims and rendered judgment in their favor in the form of declaratory judgments and a permanent injunction. *Id.* at *27. We also directed the trial court to issue a writ of mandamus ordering the Commissioners to "take immediate action to fulfill their duties imposed by law to fully fund all TUSF programs and to make all disbursements required by PURA and the Commission's existing TUSF orders and commitments." *Id*. We remanded the Rural Providers' claims for attorneys' fees under the UDJA and for a determination of their actual damages on their regulatory-takings claims. *Id.*

While the present case appears before us in a different procedural posture from that in *TTA*, the application of legal principles to the pleaded and undisputed facts is

---

[3] The *TTA* case involved one additional claim—violation of the Texas Open Meetings Act—that AMA has not raised. *See TTA*, 2022 WL 2374875, at *6, 23 n.20.

5

substantively the same and our analysis and holdings are largely dictated by that opinion. We therefore dispense with a lengthy discussion of the PUC Parties' arguments except where necessary because of significant procedural or factual differences. In their first issue, the PUC Parties contend that the trial court erred in denying their plea to the jurisdiction because AMA failed to plead valid claims for ultra vires, regulatory takings, and relief under the UDJA and APA. In their second issue, the PUC Parties argue that the trial court abused its discretion in issuing the temporary injunction.

### *Plea to the jurisdiction*

A plea to the jurisdiction is a dilatory plea seeking dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). When, as here, a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has "alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Miranda*, 133 S.W.3d at 226; *see also Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). When making this determination, we construe the pleadings liberally in the plaintiff's favor, taking factual assertions as true and looking to the plaintiff's intent. *Miranda*, 133 S.W.3d at 226. We may also consider evidence that the parties have submitted that is relevant to the jurisdictional issues, and we must do so when necessary to resolve those jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000).

6

AMA challenges as ultra vires, and seeks declaratory relief for, the same actions of the PUC Parties that the Rural Providers challenged in the *TTA* case: amending the Solix contract to create a payment hierarchy, not fully funding the TUSF, and not following the PUC's own orders establishing monthly support amounts. In short, AMA contends that (1) "While the Commission has discretion to decide *how* the TUSF should be funded, it has no discretion to determine *whether* it will be funded," and (2) "While the Commission has discretion to establish rules calculating the support owed to a Fund participant, it has no discretion to determine if it will then make those payments." We agree with AMA for the reasons stated in this Court's *TTA* opinion: PURA and the PUC's own orders and rules preclude the PUC Parties from underfunding TUSF; the PUC Parties have a ministerial duty to pay the monthly support amounts established by the PUC's final orders; and relief is available under the UDJA to require the PUC Parties to comply with applicable statutes, rules, and orders. We therefore hold that AMA sufficiently pleaded viable ultra vires claims and a claim for relief under the UDJA. *See TTA*, 2022 WL 2374875, at \*14–15, 17.

Also as in the *TTA* case, AMA contends that the Solix contract amendment constitutes a rule for purposes of the APA, triggering procedural and substantive requirements with which the PUC did not comply. For the same reasons as stated in the *TTA* opinion, we hold that AMA sufficiently pleaded a claim for relief under the APA because the Solix contract amendment constitutes a rule under the APA, thus invoking the trial court's jurisdiction over AMA's challenges thereto. *See id.* at \*23. We likewise overrule the PUC Parties' contention that AMA failed to exhaust administrative remedies before bringing its APA Section 2001.038(a) challenge. *See id.* at \*21 n.17 (concluding there was no merit to PUC Parties' exhaustion argument because Rural Providers brought "no other APA challenge" besides their

7

Subsection 2001.038(a) rule challenge, which does not contain exhaustion requirement); *see also* Tex. Gov't Code § 2001.038(d) ("A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.").

As for AMA's regulatory-takings claim, we conclude that AMA sufficiently pleaded a viable claim. As explained in the *TTA* opinion, when an alleged taking involves something between physical invasion and depriving the owner of all economically beneficial or productive use of the property, courts consider the three *Penn Central* factors in determining whether the regulatory action has gone "so far" as to require compensation. *See TTA*, 2022 WL 2374875, at \*24 (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Those factors are (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action. *Id.* (citing *Penn Cent.*, 438 U.S. at 124).

The PUC Parties did not expressly argue in their plea that AMA had not sufficiently pleaded facts supporting any of those factors but merely cited the Texas Supreme Court's opinion in *Harris County Flood Control District v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016), for the proposition that governmental "inaction cannot give rise to a taking." We rejected that argument in *TTA* because the Rural Providers, like AMA here, had not alleged mere "inaction" by the PUC Parties but instead alleged affirmative regulatory action that had a negative economic impact on them and interfered with their investment-backed expectations. *Id.* at \*25. In the *TTA* opinion, we held that the Rural Providers had established that the PUC Parties took specific affirmative regulatory action—i.e., making a decision not to fund the TUSF and implementing that decision by amending the Solix contract. *Id.* For the reasons explained in

8

*TTA*, and because our review of AMA's petition leads us to conclude that AMA sufficiently pleaded facts supporting each of the three *Penn Central* factors, we hold that AMA's petition stated a viable regulatory-takings claim.

We overrule the PUC Parties' first issue.

### *Temporary injunction*

In their second issue, the PUC Parties contend that the trial court abused its discretion in granting AMA temporary injunctive relief. A temporary injunction is an extraordinary remedy that does not issue as a matter of right. *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993). Although the party seeking an injunction is not required to establish that it will prevail at trial, *see id.* at 58, it must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted. *Abbott v. Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Id.*

We review an order granting a temporary injunction for a clear abuse of discretion. *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017). "We limit the scope of our review to the validity of the order, without reviewing or deciding the underlying merits, and will not disturb the order unless it is 'so arbitrary that it exceed[s] the bounds of reasonable discretion.'" *Id.* at 33–34 (quoting *Butnaru*, 84 S.W.3d at 204). The trial court does not abuse its discretion if

9

some evidence reasonably supports its ruling, even if the evidence is conflicting. *Id.* at 34; *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). When reviewing a temporary-injunction order, we view the evidence in the light most favorable to the order, indulging every reasonable inference in its favor. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 857 (Tex. App.—Fort Worth 2003, no pet.).

The PUC Parties do not challenge AMA's evidence under any of the three prongs of the temporary-injunction standard. Instead, they argue that the trial court abused its discretion in issuing the temporary injunction because (1) by doing so it "inexplicably disregarded its own jurisdictional analysis in the TTA case, in which the district court determined it lacked jurisdiction," making its temporary injunction arbitrary and unreasonable; (2) it thereby prioritized payment to "a single fund recipient over similarly situated recipients," which would "create a new prioritization scheme for the TUSF" and "deplete the TUSF to the point of insolvency within four months" and thus "fundamentally alter the status quo"; and (3) "equitable considerations weigh strongly against" granting the temporary injunction because AMA waited until two months after the district court issued its decisions in the *TTA* case before filing suit.

As to the PUC Parties' first argument, this Court recently determined that the trial court in the *TTA* case committed an error of law by dismissing the Rural Providers' claims. *See TTA*, 2022 WL 2374875, at \*27. A trial court has no discretion to incorrectly analyze or apply the law, *see Anti-Defamation League*, 610 S.W.3d at 916, and thus to the extent that the trial court in *TTA* determined that it had no jurisdiction over claims that are substantively analogous to those here, we have already concluded that it erred and thus its ruling is not determinative of a ruling in this case.

10

We understand the PUC Parties' second argument to be challenging whether the trial court's temporary injunction would, in fact, preserve the "status quo" pending trial on the merits. In the context of temporary injunctions, the status quo is the "last actual, peaceable, non-contested status which preceded the pending controversy." *Texas Educ. Agency v. Houston Indep. Sch. Dist.*, 609 S.W.3d 569, 572 (Tex. App.—Austin 2020, order) (per curiam) (quotation omitted), *mandamus denied sub nom. In re Texas Educ. Agency*, 619 S.W.3d 679 (Tex. 2021) (orig. proceeding). The PUC Parties argue that their implementation of the prioritization scheme for disbursements from the TUSF is the relevant "status quo" and that a new prioritization of AMA over other providers—"giving one TUSF recipient unjustified and inexplicable priority over other TUSF recipients"—would alter rather than preserve that status quo. However, "[i]f an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex. App.—Austin 2000, no pet.) (quoting *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)). If it were otherwise, the granting of an injunction would be rendered impossible. *Id.*

It was the PUC Parties' decision to amend the Solix contract and refuse to fund the TUSF that altered the parties' relationship; this dispute arises from those allegedly ultra vires actions. Therefore, the status quo is the relationship of the parties prior to the PUC Parties' challenged actions. We reject the premise implicit in the PUC Parties' contention that a party may act unlawfully and then claim that the impacts of that unlawful behavior cannot be remedied or mitigated pending a trial on the merits. We hold that the trial court's temporary injunction preserves the status quo by ordering the PUC Parties to continue making the TUSF

11

payments that AMA was receiving, and was entitled to receive, before the PUC Parties took the challenged actions.

And finally, we consider the PUC Parties' third argument: that the trial court should not have granted AMA the "extraordinary equitable relief" of a temporary injunction because AMA "slumbered" on its rights and did not act "diligently" to protect its interests. They cite *Rivercenter Associates v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) ("Equity aids the diligent and not those who slumber on their rights."), as support and contend that AMA "sat on the sidelines until the trial court ruled in the Commission's favor in the TTA Case" and "waited more than two months after" the trial court's decision in that case to file this lawsuit.

The PUC Parties have cited no authority requiring a party seeking a temporary injunction to establish more than the three above requirements, and the *Rivercenter* case it cites is distinguishable because it concerned not a temporary injunction but the equitable remedy of mandamus in the context of an untimely motion to quash a jury demand. *See id.* Moreover, the trial court heard evidence that AMA (1) waited to file its lawsuit because it was communicating directly with the PUC in an attempt to remedy the underpayment; (2) was aware that the *TTA* parties had filed a petition for rulemaking that might remedy the shortfall; and (3) was communicating with "dozens" of legislators, "pleading for them to . . . take the reins on this issue and resolve it." When it became clear to AMA that no remedy would be forthcoming, and its financial situation became "desperate," it filed this lawsuit. We conclude that the trial court did not abuse its discretion in granting AMA temporary-injunctive relief and overrule the PUC Parties' second issue.

12

## CONCLUSION

We affirm the trial court's denial of appellants' plea to the jurisdiction and its issuance of a temporary injunction in AMA's favor.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   August 10, 2022