# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00450-CV

**Texas Disposal System, Inc., Appellant**

**v.**

**City of Round Rock, Texas and Laurie Hadley, in Her Official Capacity of City Manager of Round Rock, Texas, Appellees**

**FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY**
**NO. 22-0482-C395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In two issues, Texas Disposal System, Inc. (Texas Disposal) contends that the trial court abused its discretion by denying its application for a temporary injunction. For the following reasons, we affirm.

## BACKGROUND

Pursuant to non-exclusive franchise agreements with the City of Round Rock (the City), Texas Disposal provided garbage and recycling collection for commercial businesses (non-residential services) in the City. Other companies, including FF CTR Holdings, Inc. d/b/a Central Texas Refuse (CTR), also had non-exclusive franchise agreements to provide non-residential services. The most recent agreement between the City and Texas Disposal expired on September 30, 2022, but among the agreement's terms, the City was authorized at "its sole discretion" to terminate the agreement "at any time beginning December 1, 2021, upon thirty (30) days' written notice" to Texas Disposal.

The published agenda for the city council's retreat that was held on July 22, 2021, noticed under "Resolutions/Action Items" that the city council would be "consider[ing] discussion and possible action regarding the collection and disposal of commercial refuse." During the retreat, the city council considered several alternatives before voting that the "City Manager is authorized to negotiate a sole source contract with [CTR]." At that time, CTR was the sole provider of residential garbage and recycling collection (residential services) and the largest provider of non-residential services in the City.

The city council's published agenda for its meeting on November 4, 2021, provided notice that the city council would be considering resolutions (i) authorizing the mayor to execute an "Amended and Restated Refuse Collection Contract with [CTR]" (Refuse Collection Contract) that would "allow CTR to be the single vendor for all solid waste collection services in the City" and (ii) authorizing the city manager to provide written notice to Texas Disposal and other companies that their existing franchise agreements for non-residential services would terminate on April 30, 2022. During a "packet briefing"[1] held before the November meeting and again during the November meeting, representatives from Texas Disposal and other companies spoke against the resolutions, but the city council ultimately voted in favor of the resolutions.

Shortly after the November meeting, the City and CTR entered into the Refuse Collection Contract, which covered residential and non-residential services, and on March 23, 2022, the City provided written notice to Texas Disposal that the City had approved the Refuse Collection Contract that authorized CTR to be the "single provider" of non-residential

_____

[1] According to the evidence, before regularly scheduled council meetings, the city council holds a "packet briefing," which is an open public meeting where the city council discusses items on the upcoming agenda.

2

services in the City as of May 1 and that the City intended to terminate its franchise agreement with Texas Disposal as of April 30.[2]

On April 18, Texas Disposal filed suit against the City and its manager in her official capacity[3] seeking declaratory relief under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, and mandamus or injunctive relief under the Texas Open Meetings Act (TOMA), *see* Tex. Gov't Code §§ 551.001–.146. Texas Disposal alleged, among its claims, that the City's "adoption of a sole-source exclusive franchise" for non-residential services was void "because it conflicts irreconcilably with the City Charter, which expressly provides that '[n]o exclusive franchise [of a public utility] shall ever be granted,'" *see* City of Round Rock, Charter § 11.02,[4] and that the City violated the TOMA at its July 2021 retreat.[5] CTR intervened in the suit,[6] and following a hearing, the trial court denied Texas Disposal's request for a temporary restraining order on April 29.

---

[2] In the letter, the City also proposed a franchise agreement between the City and Texas Disposal for the collection and disposal of solid waste for temporary services, but the parties did not enter into that agreement.

[3] We generally refer to the City and its manager collectively as the City.

[4] Section 11.02 of the City Charter, titled "Franchise; power of City Council," states:

The City Council shall have power to grant, amend, renew or extend by ordinance all franchises of all public utilities of every character including any person, business or corporation providing cable television or community antenna television service, operating within the City, and for such purposes is granted full power. No public utility franchise shall be transferable except to persons, firms or corporations taking all or substantially all of the holder's business in the City and except with the approval of the City Council expressed by ordinance. No franchise shall be granted for an indeterminate term. No exclusive franchise shall ever be granted.

[5] Texas Disposal's other claims included that the city council's adoption of a "sole-source exclusive franchise" was void because it violated the contract clauses of the United

On May 25, Texas Disposal filed an amended petition that included an ultra vires claim against the city manager in her official capacity, alleging that she "acted without legal authority" in carrying out "acts to effectuate an exclusive franchise for CTR." Texas Disposal sought a declaration that she cannot take future actions to enforce "the alleged exclusive franchise or to enforce the wrongful cancellation of Texas Disposal's non-exclusive franchise," and injunctive relief "barring any such future actions." Texas Disposal sought a temporary injunction "prohibiting" the City and the city manager "from taking any steps to enforce a sole-source exclusive franchise and contract for the collection of commercial waste and recyclable materials within the City"; from taking any steps to enforce the "sole-source contract's requirement for exclusive use" of a particular recycling facility; and "from enforcing any revocation of the non-exclusive franchise to collect and haul non-residential waste within the City held by Texas Disposal before the commencement of the present controversy."

The day after Texas Disposal filed its amended petition, the trial court held a hearing on Texas Disposal's request for a temporary injunction. At the beginning of the hearing, counsel for Texas Disposal represented to the trial court that its request for a temporary injunction was limited to its claims that "the City has acted in violation of its own charter" and that "the City has acted in violation of the [TOMA]." The witnesses at the hearing were Texas Disposal's director of sales, its principal owner, and its municipal sales manager; the City's director of utilities and environmental services and its assistant city manager; and CTR's director of public-sector services and community relations.

States and Texas constitutions, *see* U.S. Const. art. I §10; Texas Const. art. I § 16, and that the requirement in the "sole-source contract" to utilize a particular recycling facility violated the commerce clause of the United States Constitution, *see* U.S. Const. art. I, § 8, cl. 3.

[6] CTR has filed a responsive brief in this Court.

The evidence showed that CTR had spent over $7,000,000, beginning in November 2021, to transition and be ready by May 1 to service the non-residential customers who were being serviced by other providers and, by the time of the hearing, it was providing 98% of the non-residential services in the City. CTR's director testified about CTR's efforts to comply with the Refuse Collection Contract, including contacting Texas Disposal in November 2021 to discuss and plan for the transition. There was conflicting evidence about the number of non-residential customers that Texas Disposal was servicing at the time of the hearing. Texas Disposal's principal owner testified that it was servicing about "half" of the "roughly" 200 non-residential customers that it had been servicing in November 2021, but CTR's director testified that CTR was servicing all but 22 to 24 of Texas Disposal's former customers. The exhibits included relevant published agenda items from city-council meetings, copies of the City's agreements with CTR and Texas Disposal, the City's March 2022 termination notice to Texas Disposal, and CTR's timeline detailing its actions during the transition from November 2021 to a few days before the hearing. The parties also filed supplemental briefing after the hearing.

By order dated July 6, 2022, the trial court denied Texas Disposal's application for a temporary injunction, expressly finding that Texas Disposal had not carried its burden to prove the three required elements for a temporary injunction and that "the terms of the relief sought go beyond the scope of what is legally permissible." This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4).

ANALYSIS

Texas Disposal raises two issues. Its first issue contends that the trial court abused its discretion when it denied Texas Disposal's application for a temporary injunction because the evidence established that the City violated its charter by granting "exclusive rights" to CTR that constituted an "exclusive utility franchise" and that Texas Disposal would suffer irreparable harm without its requested injunctive relief. In its second issue, Texas Disposal argues that it was entitled to injunctive relief based on the City's alleged TOMA violation that its agenda notice for the April 2021 retreat was not "sufficiently specific" to provide notice that the city council might authorize the negotiation of an "exclusive franchise."

**Trial Court's Jurisdiction over Texas Disposal's claims**

Because the City raises jurisdictional arguments in their brief, we begin by addressing those arguments. *See Good Shepherd Med. Ctr., Inc. v. State*, 306 S.W.3d 825, 837 (Tex. App.—Austin 2010, no pet.) (stating that appellate court has duty to consider question of subject-matter jurisdiction because trial court's power to decide merits, as well as appellate court's, "rests upon it"). Although asserted in the alternative, the City seeks dismissal of Texas Disposal's claims for lack of subject-matter jurisdiction and vacating of the trial court's order denying Texas Disposal's application for temporary injunction. *See McFadden v. Olesky*, 517 S.W.3d 287, 300 (Tex. App.—Austin 2017, pet. denied) (vacating trial court's final judgment following trial and dismissing claims for lack of subject-matter jurisdiction).

Whether a court has subject-matter jurisdiction is a question of law, which we review de novo. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We focus on the plaintiff's petition to determine whether the facts that were pleaded

6

affirmatively demonstrate that subject-matter jurisdiction exists, and we construe the pleadings liberally in favor of the plaintiff. *Id.* If the challenge is to the existence of jurisdictional facts, we consider the pleadings and the evidence that is related to the jurisdictional inquiry. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When evidence is submitted that implicates the merits of the case, our standard of review generally mirrors the summary-judgment standard under Texas Rule of Civil Procedure 166a(c). *Id.* at 228; *see also* Tex. R. Civ. P. 166a(c). The burden is on the governmental unit to present evidence to support that the trial court does not have jurisdiction. *Miranda*, 133 S.W.3d at 228. If the governmental unit meets this burden, the burden shifts to the nonmovant to show that a disputed issue of material fact exists regarding the jurisdictional issue. *Id.* We take as true all evidence that is favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

The City's jurisdictional challenges to Texas Disposal's UDJA and ultra vires claims are based on Texas Disposal's pleadings, and its challenge to Texas Disposal's TOMA claim is based on evidence. We address each pleaded claim in turn.

*UDJA and Ultra Vires Claims*

The City contends that Texas Disposal's UDJA claims against the City and its ultra vires claims against the city manager are not viable because construction of a city charter is not a proper use of the UDJA. *See Suarez v. Silvas*, 613 S.W.3d 549, 556 (Tex. App.—San Antonio 2020, no pet.) (distinguishing home-rule city's charter from ordinances, holding that charter is home-rule city's constitution and not statute or ordinance for purposes of UDJA, and dismissing UDJA claims against city seeking to have charter provisions construed); *see also* Tex.

Loc. Gov't Code § 5.004 (defining home-rule municipality). The UDJA provides that one "whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004(a).

Although Texas Disposal asserts in its pleadings that the City acted in violation of the City Charter, it also challenges the City's amendments to its code of ordinances governing the collection of non-residential refuse[7] and seeks a declaration "holding invalid resolutions and ordinances adopted in violation of the [City] Charter." *See* Tex. Const. art. XI, § 5 (authorizing cities having specified populations to adopt and amend charters by majority vote of qualified voters). The UDJA provides, "In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party." Tex. Civ. Prac. & Rem. Code § 37.006(b); *see, e.g.*, *Turner v. Robinson*, 534 S.W.3d 115, 127 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) ("[UDJA] clearly and unambiguously waives the sovereign immunity of municipalities in any declaratory-judgment action involving the validity of a municipal ordinance."). Thus, Texas Disposal pleaded facts that affirmatively demonstrate that the trial court has jurisdiction over its UDJA claims against the City. *See Miranda*, 133 S.W.3d at 226.

---

[7] Texas Disposal's live pleadings included the following allegation:

The Agenda Item Summary for that resolution recited that the amendment of the Code of Ordinances was pursuant to the amended contract between the City and the preferred vendor, which "allows CTR to be the single vendor for all solid waste collection services in the City." The amendments to the ordinance included deleting references to collection entities chosen by the customer, and adding provisions regarding "the city's contractor," making it clear that the City had chosen a single preferred vendor to have the exclusive, sole-source franchise and contract for the collection of all waste in the City including nonresidential waste.

Further, a trial court has jurisdiction to consider ultra vires claims that are asserted against a governmental actor in her official capacity for the violation of statutory or constitutional provisions. *See Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (discussing ultra vires claims against governmental official); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 369–70 (Tex. 2009) (same). Here Texas Disposal alleges in its ultra vires claim that the city manager in her official capacity acted without legal authority because her actions to effectuate and enforce the Refuse Collection Contract violated the City Charter. Based on our review of Texas Disposal's pleadings, we similarly conclude that Texas Disposal pleaded facts that affirmatively demonstrate that the trial court has jurisdiction over its ultra vires claim against the city manager. *See Miranda*, 133 S.W.3d at 226; *see also Suarez*, 613 S.W.3d at 556–57 (concluding that trial court had jurisdiction to consider ultra vires claims asserting that government officials were acting without legal authority).

*TOMA Claim*

"An interested person . . . may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of [TOMA] by members of a governmental body," and a governmental entity's immunity is waived for such claims. *See* Tex. Gov't Code § 551.142(a). "An action taken by a governmental body in violation of [TOMA] is voidable," *id.* § 551.141, and generally "determining whether an action was taken in violation of the [TOMA] is a question to be decided at a trial on the merits," *Hays County v. Hays County Water Planning P'ship*, 69 S.W.3d 253, 259 (Tex. App.—Austin 2002, no pet.).

The City does not dispute that Texas Disposal is an "interested party" whose pleadings allege a TOMA violation based on an insufficiently specific agenda for the April 2021

9

retreat.  *See* Tex. Gov't Code §§ 551.041 ("A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body."), .142(a) (authorizing interested person to bring action to stop violation).  The City argues that the trial court does not have jurisdiction over Texas Disposal's TOMA claim because it is moot.  "The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a 'live' controversy at the time of the decision."  *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied) (citing *Camarena v. Texas Emp. Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988)).  A case is moot if:  (1) "it appears that one seeks to obtain a judgment on some controversy, when in reality none exists"; or (2) "when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy."  *Id.* at 846–47; *see Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (noting that "a controversy must exist between the parties at every stage of the legal proceeding" for plaintiff to have standing and that, if controversy ceases to exist, case becomes moot).

The City argues that Texas Disposal's TOMA claim is moot because Texas Disposal does not contend that a TOMA violation occurred at the city council's November meeting when the city council approved the agreement with CTR and that this approval mooted any contract "negotiation" by the city manager that was authorized during the April retreat.  In the context of this interlocutory appeal, however, we cannot conclude that the City has conclusively established that there is no remaining controversy between the parties over Texas Disposal's TOMA claim or that a judgment on that claim would have no practical legal effect on the parties' controversy.  *See Seton Health Plan*, 94 S.W.3d at 846–47; *see also Miranda*, 133 S.W.3d at 228 (placing burden on governmental unit to conclusively prove that trial court

10

lacked jurisdiction); *City of Austin v. Savetownlake.org*, No. 03-07-00410-CV, 2008 Tex. App. LEXIS 6471, at \*13–15, 2008 WL 3877683, at \*5 (Tex. App.—Austin Aug. 22, 2008, no pet.) (mem. op.) (observing that courts have broadly interpreted standing under TOMA, contrasting plaintiff's right to relief under TOMA and trial court's subject-matter jurisdiction to award it, and concluding that trial court did not err in denying plea to jurisdiction where plaintiff alleged TOMA violation and city argued that no violation of TOMA occurred).  Thus, we conclude that the City has not established that the trial court lacked jurisdiction over Texas Disposal's TOMA claim on the ground of mootness.

Having determined that the trial court has jurisdiction, we turn to Texas Disposal's issues.

**Denial of Temporary Injunctive Relief**

*Standard of Review and Applicable Law*

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right."  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).  "In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits."  *Transport Co. of Tex. v. Robertson Transp., Inc.*, 261 S.W.2d 549, 552 (Tex. 1953); *see Butnaru*, 84 S.W.3d at 204 ("A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits.").  The "status quo" is defined as "the last, actual, peaceable, non-contested status [that] preceded the pending controversy."  *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

11

To obtain a temporary injunction, an applicant must plead and prove three elements: (1) "a cause of action against the defendant"; (2) "a probable right to the relief sought"; and (3) "a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.*; *see Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.) (discussing irreparable harm as element of probable-injury requirement).

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction, and its ruling is subject to reversal only for a clear abuse of that discretion. *See Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion." *Thompson*, 24 S.W.3d at 576; *see Butnaru*, 84 S.W.3d at 204 (stating that appellate court may not substitute its judgment for that of trial court "unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion"). A trial court does not abuse its discretion if some evidence reasonably supports its decision. *See Thompson*, 24 S.W.3d at 576.

*Probable, Imminent, and Irreparable Injury*

Here the trial court found that Texas Disposal failed to establish the three required elements to be entitled to a temporary injunction. *See Butnaru*, 84 S.W.3d at 204 (requiring applicant to plead and prove three elements). We limit our review of Texas Disposal's issues to the third element because it is dispositive. *See id.*; Tex. R. App. P. 47.1.

12

Texas Disposal's first amended petition sought a temporary injunction "prohibiting" the City and its Manager "from taking any steps to enforce" the Refuse Collection Contract or the termination of Texas Disposal's agreement with the City. On appeal, Texas Disposal states that its requested injunctive relief did not seek to terminate CTR's contracts with customers or force any CTR customers to terminate their contracts with CTR but requested that "the pre-lawsuit open market conditions for commercial waste in the City prevail until trial on the merits." Texas Disposal states that it "seeks an injunction against only the exclusive nature" of the Refuse Collection Contract, not to bar its entirety.

As support for its requested temporary injunctive relief, Texas Disposal argues that the evidence showed that it had lost approximately half of its customers and "sustained damage to its goodwill and investment in infrastructure that cannot be measured in dollar terms," that it was in danger of suffering further similar damages in the absence of injunctive relief, and that it had no adequate remedy at law because it would most likely be unable to recover monetary damages from the City due to governmental immunity. *See City of Houston v. Houston Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018) (stating that generally cities "have immunity from suits for damages unless the immunity has been waived" and that ultra vires claims "are only entitled to prospective relief").

By the time of the temporary-injunction hearing, however, the agreement between the City and Texas Disposal was no longer in effect. The evidence showed that prior to Texas Disposal filing suit, the City provided the required thirty-day written notice to Texas Disposal that their agreement would be terminated effective April 30, 2022, and Texas Disposal does not dispute that the City's notice complied with the procedure set out in the agreement between them. *See Philadelphia Indem. Ins. v. White*, 490 S.W.3d 468, 471 (Tex. 2016) ("Absent

13

compelling reasons, courts must respect and enforce the terms of a contract the parties have freely and voluntarily entered."). Texas Disposal has not cited, and we have not found, authority that would support requiring the City to reinstate an agreement that the City had the "sole discretion" to terminate or obligating the City to allow Texas Disposal to provide non-residential services within the City going forward. For this reason, we conclude that there is some evidence to support the trial court's finding that Texas Disposal failed to establish probable, imminent, and irreparable injury in the interim that its requested injunctive relief would have prevented.[8] *See Butnaru*, 84 S.W.3d at 204; *see also Seton Health Plan*, 94 S.W.3d at 853 (stating that purpose of injunctive relief is to halt wrongful acts that are threatened or ongoing).

As to Texas Disposal's second issue arguing that it is entitled to temporary injunctive relief based on its TOMA claim, whether Texas Disposal established its right to a temporary injunction pending the trial on the merits is a different inquiry from whether it ultimately will be entitled to injunctive relief pursuant to its TOMA claim. *See* Tex. Gov't Code § 551.142 (addressing mandamus and injunctive relief that is available for TOMA violation). Pleading a TOMA claim did not relieve Texas Disposal of its burden to plead and prove the three elements for a temporary injunction. *See Salazar v. Gallardo*, 57 S.W.3d 629, 632–33 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (requiring applicant to establish three elements for temporary injunction in context of TOMA claim); *see also Transport Co.*, 261 S.W.2d at 552 (stating that only question before trial court in determining whether to grant application for temporary injunction is right of applicant to preservation of status quo pending final trial of case

---

[8] Among its findings in its order denying Texas Disposal's application for a temporary injunction, the trial court found that "the terms of the relief sought go beyond the scope of what is legally permissible." The trial court reasonably could have found that it had no authority to reinstate the already terminated agreement between Texas Disposal and the City.

14

on merits).  Thus, we conclude that Texas Disposal's request for injunctive relief pursuant to its TOMA claim did not support its requested temporary injunctive relief.  *See, e.g.*, *City of Brownsville v. Brownsville GMS, Ltd.*, No. 13-19-00311-CV, 2021 Tex. App. LEXIS 3507, at *20–22 (Tex. App.—Corpus Christi–Edinburg May 6, 2021, pet. denied) (mem. op.) (observing that trial court had no authority under TOMA to force city to remain in contract with applicant or enjoin city from entering contract with another entity in future because "TOMA only allows for the voiding of actions which were approved in violation of TOMA").

*Delay in Seeking Equitable Relief*

We also observe that the trial court reasonably could have considered Texas Disposal's delay in seeking equitable relief and balanced the equities and resulting hardships in favor of denying Texas Disposal's requested temporary injunction.  *See Thompson*, 24 S.W.3d at 578 (stating that trial court may balance equities and resulting hardships from issuance or denial of temporary injunction); *Landry's Seafood Inn & Oyster Bar-Kemach, Inc. v. Wiggins*, 919 S.W.2d 924, 927 (Tex. App.—Houston [14th Dist.] 1996, no writ) (explaining that equitable principles apply to request for injunctive relief and that movant "must have acted promptly to enforce its rights"); *see also* Tex. Civ. Prac. & Rem. Code § 65.001 (stating that generally "principles governing courts of equity govern injunction proceedings"); *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding) ("A request for injunctive relief invokes a court's equity jurisdiction."); *NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.) (concluding that trial court did not abuse its discretion in balancing equities between parties and denying temporary injunctive relief).

15

The evidence showed that Texas Disposal was aware in November 2021 that the city council had authorized the Refuse Collection Contract and the termination of Texas Disposal's agreement,[9] but Texas Disposal delayed filing suit and seeking temporary injunctive relief until shortly before May 1, when the Refuse Collection Contract was effective. During this time period, CTR incurred costs to comply with its contract with the City that exceeded over $7,000,000, and by the time of the temporary-injunction hearing, it was providing 98% of the non-residential services in the City.

The trial court also could have credited the testimony of CTR's director that if the trial court were to grant Texas Disposal's requested temporary injunctive relief, there would be "absolute chaos"[10] and concerns about the health-and-safety aspect of consistent garbage collection. *See Amend v. Watson*, 333 S.W.3d 625, 630 n.4 (Tex. App.—Dallas 2009, no pet.) (stating that in exercising its discretion, "trial court was required 'to take into account other considerations evident on the face of the pleadings and in the evidence adduced at the temporary-injunction hearing—for example, the issue of comparative injury or a balancing of the "equities" and hardships, including a consideration of the important factor of the public interest'" (citing *Methodist Hosps. of Dallas v. Texas Indus. Accident Bd.*, 798 S.W.2d 651, 660 (Tex. App.—Austin 1990, writ dism'd w.o.j.))); *Thompson*, 24 S.W.3d at 579 (stating that appellate court views evidence in light most favorable to trial court's order and concluding that trial court did

---

[9] Texas Disposal's principal owner testified that he attended the November city council meeting, and CTR's director testified about CTR's attempts to contact Texas Disposal and its communications with others about the Refuse Collection Contract shortly after the November meeting.

[10] CTR's director testified that if the city council's decisions "are rolled back to a status quo" prior to the city council's November 2021 meeting, "it would be absolute chaos," with some customers wanting to stay with CTR and some wanting to go back to their prior service provider.

not abuse discretion in granting temporary injunctive relief based in part on health risks involved if hospital were closed and balancing equities in favor of doctors and patients).

**CONCLUSION**

For these reasons, we conclude that the trial court did not abuse its discretion in denying Texas Disposal's application for a temporary injunction, and accordingly, we overrule its issues and affirm the trial court's order denying Texas Disposal's application for temporary injunction.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:  May 31, 2023