# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00571-CV

---

**Texas Department of State Health Services, and Dr. Jennifer A. Shuford, in her Official Capacity as Commissioner of the Texas Department of State Health Services, Appellants**

**v.**

**Sky Marketing Corp., d/b/a Hometown Hero; Create A Cig Temple, LLC; Darrell Surif; and David Walden, Appellees**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-006174, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

The Texas Department of State Health Services (the Department) and Dr. Jennifer A. Schuford, in her official capacity as the Department's commissioner (the Commissioner),[1] appeal from the trial court's orders denying their plea to the jurisdiction and granting a temporary injunction enjoining "the effectiveness going forward of amendments to the terms 'tetrahydrocannabinols' and 'Marihuana extract'" in the Department's 2021 Schedule of Controlled Substances and the Department's "rule stated on [its] website that Delta-8 THC in any concentration is considered a Schedule I controlled substance." For the following reasons, we affirm the trial court's orders denying appellants' plea to the jurisdiction and granting a temporary injunction.

---

[1] We have substituted Dr. Jennifer A. Schuford for Dr. John Hellerstedt. *See* Tex. R. App. P. 7.2(a) (automatically substituting public official's successor as party when public official is party in official capacity and ceases to hold office during pendency of appeal).

BACKGROUND

**The Texas Controlled Substance Act**

We begin with a brief overview of the commissioner's role concerning the schedules of controlled substances under the Texas Controlled Substances Act (TCSA). *See* Tex. Health & Safety Code §§ 481.001–.354. The legislature designated substances in Schedules I through V as controlled substances and delegated the duty of establishing, modifying, and publishing the schedules to the commissioner. *See id.* §§ 481.032 (containing most current version of schedules of controlled substances), .034 (addressing establishment and modification of schedules of controlled substances by commissioner), .036 (requiring commissioner to publish schedules); *see also* TCSA, 63rd Leg., R.S., ch. 429, §§ 2.03–.05, 1973 Tex. Gen. Laws 1132, 1135–41 (listing controlled substances that legislature initially included in schedules). The term "controlled substance" includes "a drug, an adulterant, and a dilutant, listed in Schedules I through V" and "the aggregate weight of any mixture, solution, or other substance containing a controlled substance." Tex. Health & Safety Code § 481.002(5).

The commissioner is statutorily required to "annually establish the schedules of controlled substances." *See id.* § 481.034(a). The schedules must include the "complete list of all controlled substances from the previous schedules and modifications in the federal schedules of controlled substances as required by Subsection (g)." *Id.*; *see also* 21 U.S.C. §§ 811 (addressing authority and criteria for classification of substances), 812 (providing schedules of controlled substances). Generally, "if a substance is designated, rescheduled, or deleted as a controlled substance under federal law" and notice is provided, "the commissioner similarly shall control the substance under [the TCSA]." Tex. Health & Safety Code § 481.034(g); *see also, e.g.*, 40 Tex. Reg. 8050 (2015) (amending schedules of controlled substances to remove

2

substance that administrator of Drug Enforcement Administration (DEA) removed from federal schedules); 38 Tex. Reg. 4928 (2013) (amending schedules to include several substances temporarily scheduled by DEA administrator); 30 Tex. Reg. 2934 (2005) (providing notice of amendment to schedules to add substance following federal legislation). The commissioner, however, may object when a substance is "designated, rescheduled, or deleted as a controlled substance under federal law" by timely publishing "the reasons for the objection," "giv[ing] all interested parties an opportunity to be heard," and, after the hearing, "publish[ing] a decision, which is final unless altered by statute." Tex. Health & Safety Code § 481.034(g).

In addition to modifying the schedules of controlled substances to conform with the federal schedules, the commissioner also has independent authority to add, delete, or reschedule a substance on the schedules. *See id.* § 481.034(a). In this context, the commissioner must make such modifications in accordance with section 481.035, "in a manner consistent with this subchapter," and "with approval from the executive commissioner." *Id.*; *see also id.* §§ 481.002(55) ("'Executive commissioner' means the executive commissioner of the Health and Human Services Commission."), .035 (addressing required findings for commissioner to place substance in particular schedule).[2] Prior to making a modification to a schedule in this context, the commissioner must consider eight factors and make findings as to those factors. *Id.* § 481.034(d), (e). "If the commissioner finds the substance has a potential for abuse, the executive commissioner shall adopt a rule controlling the substance." *Id.* § 481.034(e); *see id.* § 481.001(55).

---

[2] For example, to place a substance on Schedule I, the commissioner must find that the substance "has a high potential for abuse" and "has no accepted medical use in treatment in the United States or lacks accepted safety for use in treatment under medical supervision." Tex. Health & Safety Code § 481.035(a).

3

**Legalization of Hemp**

Cannabidiol (CBD) and tetrahydrocannabinol (THC) are compounds in cannabis plants, and THC creates the feeling of intoxication. 25 Tex. Admin. Code § 300.101(6), (33) (2020) (Dept. of St. Health. Servs., Definitions) (defining CBD and THC). THC exists in the form of isomers, including delta-9 THC and delta-8 THC. Delta-9 THC is the "primary psychoactive component of cannabis." *Id.* § 300.101(10); *see id.* (stating that for purposes of chapter, "terms delta-9 tetrahydrocannabinol and THC are interchangeable").

In 2018, federal legislation excluded "hemp" from marihuana in the federal schedules of controlled substances and authorized states to create their own plans to regulate the hemp industry. *See generally* Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (2018) (2018 Farm Bill). Hemp is defined under federal law as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o. The federal legislation modified the term "tetrahydrocannabinols" to not include "tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946 [7 U.S.C. § 1639o]." *See* 21 U.S.C. § 812(c)(17). Thus, the 2018 Farm Bill limited the control of "tetrahydrocannabinols in hemp" to "any such material that contains greater than 0.3% of [delta-9 THC] by dry weight." *See* 85 Fed. Reg. 51639, 51641 (2020) (addressing change in definition of THC under 2018 Farm Bill). The 2018 Farm Bill "[did] not

impact the control status of synthetically derived [THC]." "All synthetically derived [THCs] remain schedule 1 controlled substances."[3] *See id.*

In 2019, the Texas Legislature legalized hemp and hemp-derived products. *See generally* Act of May 15, 2019, 86th Leg., R.S., ch. 764, § 7, 2019 Tex. Gen. Laws 2085, 2099; *see also* Tex. Health & Safety Code §§ 443.204(1) (stating that "hemp-derived cannabinoids, including cannabidiol [CBD], are not considered controlled substances or adulterants"), 481.002(5) (defining term "controlled substance" as not including "hemp, as defined by Section 121.001, Agricultural Code), (26) (defining term "marihuana" as not including "hemp, as that term is defined by Section 121.001, Agriculture Code"). The Texas Legislature's definition of hemp mirrors the federal definition: "the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *See* Tex. Agric. Code § 121.001; *see also* 25 Tex. Admin. Code § 300.101(1) (defining "acceptable hemp THC level" as "delta-9 tetrahydrocannabinol content concentration level on a dry weight basis, that, when reported with the accredited laboratory's measurement of uncertainty, produces a distribution or range that includes a result of 0.3 percent or less").

Prior to the 2019 legislation, the Department's schedules designated THC naturally contained in the cannabis plant as well as synthetic equivalents, marihuana, and

---

[3] The parties dispute whether delta-8 THC is synthetic, and the Department and the Commissioner represent that it is "common knowledge that delta-8 is only sold in synthetic form" and ask this Court to take judicial notice of "that common knowledge." We decline to take judicial notice and expressly do not resolve the parties' dispute as to whether delta-8 THC is synthetic because it is unnecessary to the disposition of this appeal concerning the trial court's jurisdiction and temporary injunctive relief. *See* Tex. R. App. P. 47.1.

marihuana extract as Schedule I controlled substances. *See* 42 Tex. Reg. 1271 (2017); *see also* 81 Fed. Reg. 90194 (2017). Conforming to the federal and state legislation, the Commissioner's 2019 Schedule of Controlled Substances reflected that hemp and THC derived from hemp as defined by federal law were not Schedule I controlled substances:

> *(23) Marihuana
>
> The term marihuana does not include hemp, as defined in section 297A of the Agricultural Marketing Act of 1946.
>
> . . .
>
> *(31) Tetrahydrocannabinols;
>
> meaning tetrahydrocannabinols naturally contained in a plant of the genus Cannabis (cannabis plant), except for tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946), as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following . . . .

*See* 44 Tex. Reg. 2517 (2019) (providing 2019 version of schedules of controlled substances).

Following the United States Department of Agriculture's (USDA) approval of a state plan for hemp production, the executive commissioner of the Department of Health and Human Services adopted rules and procedures related to the manufacture, distribution, and sale of consumable hemp products. *See* 25 Tex. Admin. Code §§ 300.100–.606 (2020) (Dep't of St. Health Servs., Manufacture, Distribution, and Retail Sale of Consumable Hemp Products); *see also* Tex. Health & Safety Code § 443.051 (requiring executive commissioner to adopt rules and procedures necessary to administer and enforce Chapter 443, which concerns manufacture, distribution, and sale of consumable hemp products); *Texas Dep't of St. Health Servs. v. Crown Distrib. LLC*, No. 03-20-00463-CV, 2021 Tex. App. LEXIS 6283, at *1–2 (Tex. App.—Austin

6

Aug. 5, 2021, no pet.) (mem. op.) (considering rule adopted under Chapter 443). Production and the sale of consumable hemp products in Texas followed.[4]

**Commissioner's Objection to the DEA's Interim Final Rule**

In September 2020, the Commissioner published an objection to the DEA's Interim Final Rule (IFR) "amending the regulatory controls over marihuana, tetrahydrocannabinols, and other marihuana-related constituents in the Controlled Substances Act." 45 Tex. Reg. 6613 (2020); *see generally* 85 Fed. Reg. 51639 (2020). The IFR's stated purpose was to codify in the DEA's regulations the statutory amendments to the federal controlled substances act that were made by the 2018 Farm Bill "regarding the scope of regulatory controls over marihuana, tetrahydrocannabinols, and other marihuana-related constituents" and conform the DEA's regulations to the statutory amendments that had "already taken effect." 85 Fed. Reg. at 51639. The IFR "[did] not add additional requirements to the regulations" and "did no more than incorporate the statutory amendments." *Id.*

Purportedly acting pursuant to Section 481.034(g) of the TCSA, the Commissioner objected to the IFR's modification of two definitions in the DEA's regulations as follows:

> The interim final rule modifies 21 CFR 1308.11(d)(31) by adding language stating that the definition of "Tetrahydrocannabinols" does not include "any material, compound, mixture or preparation that falls within the definition of

---

[4] According to appellees' pleadings, following the enactment of the 2018 Farm Bill and the Texas legislation, "an entirely new market for [hemp] products emerged." In Texas, there are "hemp businesses all across the supply chain, from cultivation to sale, and all areas in between," the Department "has issued licenses for hundreds of [consumable hemp products] processors and manufacturers," and the Department has registered "thousands" of retailers of consumable hemp products.

> hemp set forth in 7 U.S.C 1639o." The commissioner objects to this modification.
>
> The interim final rule modifies 21 CFR 1308.11(d)(58) by stating that the definition of "Marihuana Extract" is limited to extracts "containing greater than 0.3 percent delta-9-tetrahydrocannabinol on a dry weight basis." The commissioner objects to this modification.

*See* Tex. Health & Safety Code § 481.034(g) (authorizing commissioner to object when federal law designates, reschedules, or deletes controlled substance on schedules). The Commissioner objected to the two definitions that the DEA proposed "to the extent that the definitions allow for the presence or addition of tetrahydrocannabinols aside from the presence of [delta-9 THC]. Multiple [THC] isomers and variants may have pharmacological or psychoactive properties." According to the Commissioner, delta-8 THC derived or extracted from hemp or CBD produces a higher concentration product that is subject to control.

In October 2020, the Commissioner held a brief public hearing via Zoom on her objections; no comments were received during the hearing; and in January 2021, the Commissioner published her decision that Texas did not adopt the DEA's "modifications of the two definitions" as to the federal schedules. *See* 46 Tex. Reg. 873 (2021).

In March 2021, the Commissioner published the 2021 Schedule of Controlled Substances with the following changes (shown in bold) to Schedule I substances from the prior year as to THC and marihuana extract:

> *(31) Tetrahydrocannabinols, meaning tetrahydrocannabinols naturally contained in a plant of the genus Cannabis (cannabis plant), **except for up to 0.3 percent delta-9-tetrahydrocannabinols in hemp (as defined under Texas Agriculture Code 121)**, as well as synthetic equivalents of the substances contained in the cannabis plant, or in the resinous extractives of such plant, and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity to those substances contained in the plant, such as the following . . .

8

*(58) Marihuana extract, meaning an extract containing one or more cannabinoids that has been derived from any plant of the genus Cannabis, **except for extracts derived from hemp (as defined under Texas Agriculture Code 121) containing up to 0.3% delta-9-tetrahydrocannabinol on a dry weight basis**, other than separated resin (whether crude or purified) obtained from the plant.

46 Tex. Reg. 1763 (2021). The schedule modified its previous version by referring to the definitions in the Texas Agriculture Code, instead of the federal statutes, and reworded the definitions to designate THC as controlled, "except for up to 0.3 percent" delta-9 THC in hemp, and marihuana extract as controlled, except for extracts derived from hemp "containing up to 0.3% delta-9-tetrahydrocannabinol." *Cf.* 44 Tex. Reg. 2517 (2019).

In October 2021, the Department also posted the following statement on its website as to "Consumable Hemp Products":

Texas Health & Safety Code Chapter 443 (HSC 443), established by House Bill 1325 (86th Legislature), allows Consumable Hemp Products in Texas that do not exceed 0.3% Delta-9 tetrahydrocannabinol (THC). All other forms of THC, including Delta-8 in any concentration and Delta-9 exceeding 0.3%, are considered Schedule I controlled substances.

**Litigation Ensued**

Shortly after the Department posted this statement on its website, appellees sued the Department and the Commissioner seeking temporary and permanent injunctions and declaratory relief. In their second amended petition, appellees alleged that (1) the Commissioner acted ultra vires by adopting any amendments to "tetrahydrocannabinols" and "Marihuana extract" in the 2021 Schedule of Controlled Substances because the Commissioner did not comply with statutorily required procedures under the TCSA, *see* Tex. Health & Safety Code §§ 481.034–.035, and (2) the amendments to the definitions and the Department's October 2021 statement were invalid rules under the Texas Administrative Procedure Act (APA), *see generally*

Tex. Gov't Code §§ 2001.021–.041 (setting out procedures for APA rulemaking). Appellees alleged that delta-8 THC that was derived from hemp was de-scheduled and no longer deemed a controlled substance and that the Department and the Commissioner had improperly amended the schedules of controlled substances to make delta-8 THC derived from hemp an illegal Schedule I controlled substance.[5] Among its requested relief, appellees sought to temporarily enjoin the "effectiveness going forward" of the amendments to the terms "tetrahydrocannabinols" and "Marihuana extract" in the Department's 2021 Schedule of Controlled Substances.

The Department and Commissioner filed a plea to the jurisdiction with evidence, seeking to have appellees' claims dismissed on the grounds that appellees lacked standing and their claims were barred by sovereign immunity. Appellants contended that the Commissioner did not act ultra vires because she acted within her authority under Section 481.034(g) of the TCSA and that appellees did not have standing because they sought relief from criminal enforcement, which was not within the Department's responsibility, and they did not allege that the Department was attempting to revoke their licenses or that they were facing civil penalties. The evidence attached to the plea included copies of the Department's published schedules of controlled substances from 2017 to 2021, the Commissioner's September 2020 notice of objection, the January 2021 decision order, the DEA's IFR, an analysis of changes in cannabis potency from 1995 to 2014, and other reports and articles on delta-8 THC.

The trial court held a hearing on the plea to the jurisdiction and appellees' request for temporary injunctive relief. Appellees' witnesses were the executive director of the Texas

---

[5] As counsel for appellees explained during the hearing, the 2021 schedule made the change from prohibiting delta-9 THC in concentrations exceeding 0.3 percent to "prohibiting all forms of THC, except for delta-9 THC in concentrations not exceeding 0.3 percent."

10

Hemp Foundation; the director of government and public affairs for the Department of Texas Veterans of Foreign Wars; a retailer of products containing delta-8 THC; the chief financial officer of Sky Marketing; an owner of a company that manufactures products containing delta-8 THC and retail stores selling delta-8 products; and the deputy state inspector for the State of Texas. Appellees' witnesses testified about the Commissioner's modifications to the schedules, their involvement with delta-8 THC products, and how the Commissioner's modifications to the schedules had impacted them. The evidence showed that after hemp was legalized in Texas, products containing delta-8 THC derived from hemp were being sold in Texas and used by individuals to manage pain and other health issues, including dependency on opioids. Both sides offered exhibits that the trial court admitted, but appellants did not call any witnesses.

Following the hearing, the trial court denied appellants' plea to the jurisdiction and granted appellees' request for a temporary injunction, enjoining "the effectiveness going forward of amendments to the terms 'tetrahydrocannabinols' and 'Marihuana extract' in the [Department's] 2021 Schedule of Controlled Substance." The trial court ordered the Department to "remove from its currently published Schedule of Controlled Substances the most recent modifications" of the definitions and any subsequent publications and "enjoin[ed] the effectiveness going forward of the rule stated on [the Department's] website that Delta-8 THC in any concentration is considered a Schedule I controlled substance." This appeal followed.

**ANALYSIS**

In two issues, the Department and the Commissioner contend that the trial court erred when it denied their plea to the jurisdiction and abused its discretion when it granted temporary injunctive relief.

11

**Plea to the Jurisdiction**

*Standards of Review and Applicable Law*

"Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability." *Matzen v. McLane*, 659 S.W.3d 381, 387–88 (Tex. 2021) (citing *PHI, Inc. v. Texas Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019)). "Because the assertion of sovereign immunity implicates the courts' jurisdiction, immunity is properly raised in a plea to the jurisdiction." *Id.* at 388 (citing *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)).

To defeat a plea to the jurisdiction that challenges the pleadings, the plaintiff suing a state agency or a state official must "affirmatively demonstrate" in its pleadings that sovereign immunity has been waived or that it does not apply. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.* A plea to the jurisdiction may also challenge the existence of jurisdictional facts. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). "In those cases, the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject matter jurisdiction of the court and the merits of the case.'" *Id.* (quoting *Miranda*, 133 S.W.3d at 226). The trial court's review of the evidence "mirrors that of a traditional summary judgment motion." *Id.*; *see Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). "We review orders on pleas to the jurisdiction de novo." *Matzen*, 659 S.W.3d at 388 (citing *University of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019)); *see Miranda*, 133 S.W.3d at 226.

The jurisdictional issues that appellants raise also involve statutory construction, which is a question of law that we review de novo. *See First Am. Title Ins. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). We begin "'with the Legislature's words,' looking first to their plain and common meaning." *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 418 (Tex. 2017) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865–66 (Tex. 1999)); *see also Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010) (construing "text according to plain and common meaning unless a contrary intention is apparent from the context or unless such a construction leads to absurd results" (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008))). "In conducting this analysis, 'we look at the entire act, and not a single section in isolation.'" *Murphy*, 518 S.W.3d at 418. This "text-based approach to statutory construction requires us to study the language of the specific provision at issue, within the context of the statute as a whole, endeavoring to give effect to every word, clause, and sentence." *Id.* (quoting *Ritchie v. Rupe*, 443 S.W.3d 856, 867 (Tex. 2014)).

*Standing*

As part of their first issue, the Department and the Commissioner argue that the trial court erred in denying their plea to the jurisdiction because appellees do not have standing.

Standing is a component of subject matter jurisdiction. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000); *see Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex. 1993) (discussing requirement that party has standing to invoke trial court's subject matter jurisdiction). "The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome."

*Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). To establish standing, a plaintiff must show (1) an actual or imminent injury in fact that is (2) fairly traceable to the challenged conduct and (3) likely to be redressed by the plaintiff's requested remedy. *Heckman v. Williamson County*, 369 S.W.3d 137, 154–55 (Tex. 2012); *see also California v. Texas*, 141 S. Ct. 2104, 2113–116 (2021) (analyzing whether individual plaintiffs had standing).

The Department and the Commissioner challenge appellees' standing on the ground that they cannot redress appellees' alleged harm. They argue that there is no enforcement connection between the Department and the schedules of controlled substances, that the Department is not the governmental entity responsible for criminal enforcement of controlled substances, that courts enjoin state officials and not laws or executive orders, and that "the relief that [appellees] would need to redress their alleged injury [is] beyond anything the trial court or this Court can order the Commissioner" to do. *See* Tex. Health & Safety Code § 481.003 (authorizing "director" to "adopt rules to administer and enforce this chapter"); *see also id.* § 481.002(11) ("'Director' means the director of the Department of Public Safety or an employee of the department designated by the director."). Appellants contend that "the DEA has also concluded that Delta-8 THC is [a] schedule I controlled substance," making the trial court's temporary injunction "merely advisory."

The Department, however, is the state agency that is required to maintain the schedules and has statutory authority to regulate consumable hemp products. *See, e.g.*, Tex. Health & Safety Code §§ 443.103 (requiring license from Department to manufacture hemp and requiring application to be accompanied by certain information including "any other information required by department rule"), .151 (requiring consumable hemp products to be tested "for any other substance prescribed by the department"), 481.034(a); *see also* 25 Tex. Admin. Code

14

§§ 300.100 (Dep't of St. Health Servs., Purpose) ("This chapter implements Texas Health and Safety Code, Chapter 443, regulating the manufacture, distribution, and retail sale of consumable hemp and consumable hemp products in the State of Texas."), 300.201(a) (Dep't of St. Health Servs., Application for License or Renewal) (requiring person to hold license issued by Department before engaging in manufacture, processing, or distribution of consumable hemp products). Among its regulatory roles concerning the hemp industry, the Department has authority to impose administrative penalties against persons who hold licenses or are registered under the chapter and violate the chapter. *See* 25 Tex. Admin. Code § 300.606(a) (Dep't of St. Health Servs., Administrative Penalty); *see also* Tex. Health & Safety Code § 481.301 (authorizing Department to impose administrative penalty on person who violates specified sections or "rule or order adopted under any of those specified sections").

Appellees alleged in their pleadings and presented evidence of injury "fairly traceable" to the Commissioner's amendments to the schedules of controlled substances, which the Commissioner is statutorily required to "annually establish" and maintain, and they seek prospective relief. *See* Tex. Health & Safety Code § 481.034(a); *Heckman*, 369 S.W.3d at 154–55. Although appellees' pleadings allege potential harm from criminal enforcement of the "improper modifications to the terms," they also allege that "such enforcement will effectively ban [them] from conducting further business related to their sale of certain legal hemp products" and that the appellees' businesses have lost and will continue to lose revenue, good will, and reputation and have had to reduce their workforce. Appellees' evidence presented at the hearing also showed ongoing injuries to businesses manufacturing and selling products with delta-8 THC derived from hemp, including loss of customers, market share, and revenue, and to individuals because of the loss of effective treatment for certain health conditions; the evidence showed

15

those injuries were fairly traceable to the challenged schedule modifications and the Department's October 2021 statement. Appellees' requested relief to enjoin the effectiveness of the modifications going forward likely would redress these alleged ongoing injuries. *See Heckman*, 369 S.W.3d at 154–55.

Viewing the pleadings liberally in favor of appellees and the evidence in the light most favorable to them, we conclude that the trial court did not err when it determined that they had standing to assert their claims against the Department and the Commissioner. *See Garcia*, 372 S.W.3d at 635 (explaining that review of evidence in plea-to-the-jurisdiction context mirrors that of motion for traditional summary judgment); *Miranda*, 133 S.W.3d at 226.

*Ultra Vires Claim*

As part of their first issue, the Department and the Commissioner also challenge the trial court's jurisdiction over appellees' ultra vires claim against the Commissioner[6] on the grounds that the claim "lacks merit as a matter of law and seeks impermissible retrospective relief" and that "the Commissioner's actions were authorized by Chapter 481 of the Texas Health and Safety Code." Specifically, they argue that the Commissioner "did not exceed [her] authority under Section 481.034(g)" and that the Commissioner was not required to comply with the other subsections of Section 481.034. *See* Tex. Health & Safety Code § 481.034.

"Texas law recognizes 'ultra vires' claims seeking prospective injunctive relief against individual government officials in their official capacities." *Matzen*, 659 S.W.3d at 388

---

[6] In their briefing, appellees confirm that their ultra vires claim is not against the Department. *See Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) ("[T]he UDJA does not enlarge the trial court's jurisdiction but is 'merely a procedural device for deciding cases already within a court's jurisdiction.'" (quoting *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011))); *Sawyer Tr.*, 354 S.W.3d at 388 (agreeing that "there is no general right to sue a state agency for a declaration of rights").

16

(citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373, 376 (Tex. 2009)); *see Phillips v. McNeill*, 635 S.W.3d 620, 628–29 (Tex. 2021) (discussing ultra vires suits against government officials); *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 349–55 (Tex. 2019)) (same). To successfully bring an ultra vires claim, a plaintiff must plead and prove "that the defendant government official 'acted without legal authority or failed to perform a ministerial act.'" *Matzen*, 659 S.W.3d at 388 (quoting *Heinrich*, 284 S.W.3d at 372). "An officer acts without legal authority 'if he exceeds the bounds of his granted authority or if his acts conflict with the law itself.'" *Id.* (quoting *Houston Belt & Terminal Ry.*, 487 S.W.3d at 158); *see Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 583 (Tex. 2015) (stating that whether official's conduct was ultra vires "depends on what the statute required").

Appellees argue that they have alleged facts that, if true, demonstrate that the Commissioner, acting in her official capacity, exceeded her statutory authority and violated Section 481.034 when she amended the schedules of controlled substances based on her objection to the DEA's IFR. Appellees alleged that Subsection (g) did not apply, *see* Tex. Health & Safety Code § 481.034(g); and that the Commissioner was required to comply with the other subsections of Section 481.034 before modifying the schedules, *see id.* §§ 481.034(a), (b), (d), (e), (h), .035(a), which she failed to do. According to appellees, the Commissioner may not invoke Section 481.034(g) as a basis to circumvent the prescribed process for amending the schedules under the other subsections of Section 481.034, that the Commissioner acted ultra vires by violating Section 481.034 when she amended the schedules purportedly in response to the IFR, and that their requested relief is prospective.

Section 481.034 sets out mandatory requirements before the Commissioner may add or delete a substance from the schedules of controlled substances, and appellees have alleged

17

in their pleadings that the Commissioner failed to follow the statutory requirements when she modified the definitions of THC and marihuana extract in the schedules. Among the statutory prohibitions in Section 481.034, the Commissioner may not add a substance to the schedules that the legislature has deleted from the schedules. *See id.* § 481.034(c)(1) *see also* Tex. Gov't Code § 311.016(5) ("'May not' imposes a prohibition and is synonymous with 'shall not.'"). Appellees rely on this provision and the statutory definitions of hemp to assert that the Commissioner acted ultra vires when she modified the schedules because the legislature removed hemp and hemp-derived products, which appellees allege include delta-8 THC products, from the schedules of controlled substances. *See* Tex. Agric. Code § 121.001 (defining "hemp"); *see also* Tex. Health & Safety Code §§ 443.204(1) (providing that rules adopted by executive commissioner regulating sale of consumable hemp products must, to extent allowable by federal law, reflect principle that "hemp-derived cannabinoids, including cannabidiol, are not considered controlled substances or adulterants"), 481.002(5) (defining "controlled substances" to not include hemp, as defined in Agricultural Code, or THC in hemp). This allegation—based on the prohibition in Subsection (c)—is sufficient to invoke the trial court's jurisdiction. *See Houston Belt & Terminal Ry.*, 487 S.W.3d at 158 (explaining that state official acts without legal authority when he "exceeds the bounds of his granted authority or if his acts conflict with the law itself").

Another provision in Section 481.034 that appellees rely on to support the trial court's jurisdiction is Subsection (b), which provides that "[e]xcept for alterations in schedules required by Subsection (g)," the Commissioner "may not make an alteration to a schedule unless the Commissioner holds a public hearing on the matter in Austin and obtains approval from the executive commissioner." *See* Tex. Health & Safety Code § 481.034(b); *see also* Tex. Gov't

18

Code § 311.016(5). Appellees contend that Subsection (g) did not apply and, therefore, that the Commissioner was required to comply with Subsection (b).[7]

Beginning with the plain language of the phrase stating the exception in Subsection (b), we observe that it limits its scope to alterations to the schedules that are "required" in Subsection (g). *See Webster's Third New Int'l Dictionary* 1929 (defining "require" to mean "to demand as necessary or essential (or on general principles or in order to comply with or satisfy some regulations)"). Thus, the plain language makes clear that the exception only applies when the Commissioner does not object to a federal law designating a substance as a controlled substance or rescheduling or deleting a substance because in that situation, the Commissioner is required to make alterations to conform the state schedules to mirror the federal law. *See* Tex. Health & Safety Code § 481.034(g) (stating that commissioner "similarly shall designate, reschedule, or delete the substance" unless commissioner objects); *see also* Tex. Gov't Code § 311.016(2) ("'Shall' imposes a duty."), (5); *City of Austin v. Southwestern Bell Tel. Co.*, 92 S.W.3d 434, 442 (Tex. 2002) (stating that court generally construes "shall" "as mandatory, unless legislative intent suggests otherwise"); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001) (stating that "shall" "generally recognized as mandatory, creating a duty or obligation"). It follows that, when the exception does not apply, Subsection (b) mandates that the Commissioner hold a hearing on the matter in Austin and obtain the approval of the executive commissioner before making an alteration to the schedule. *See* Tex. Health & Safety Code § 481.034(b).

---

[7] Even if the Commissioner properly objected to the IFR, appellees assert that the Commissioner in her stated objection to the IFR did not notify the public that a hearing would be held "on the matter" of the Department's intention to make substantive modifications to the definitions of THC and marihuana extract on the schedules. *See* Tex. Health & Safety Code § 481.034(b).

19

The Department and the Commissioner argue that Subsection (g) of Section 481.034 authorized the Commissioner's actions because the IFR "*did* designate and reschedule the substances" by changing the definition of THC and marihuana extract in the federal schedule and that the IFR was "out-of-sync" with the federal statute.[8] But, even if we assume that the IFR triggered the applicability of Subsection (g) when it was published in the federal register, the plain language of Subsection (g) does not authorize the Commissioner to modify the schedules except when she is modifying the schedules to conform them with federal modifications. When the Commissioner objects to a modification in the federal schedules, the Commissioner does not have to change the state schedules to conform them with the federal schedules and may maintain the state schedules as they are, but it does not follow from this authority that she is also authorized to modify the state schedules based on an objection to a federal modification without following the additional requirements in Section 481.034 for doing so.

The plain language of Subsection (a) makes this clear:

> (a)     The commissioner shall annually establish the schedules of controlled substances. These annual schedules *shall include* the complete list of all controlled substances from the previous schedules and modifications in the federal schedules of controlled substances *as required by Subsection (g). Any further additions to and deletions from these schedules, any rescheduling of substances and any other modifications made by the commissioner to these schedules of controlled substances shall be made*:
>
> > (1)     in accordance with Section 481.035;
> >
> > (2)     in a manner consistent with this subchapter; and
> >
> > (3)     with approval of the executive commissioner.

---

[8] The IFR's summary stated that it "merely conforms DEA's regulations to the statutory amendments to [the federal controlled substance act] that have already taken effect, and that it does not add additional requirements to the regulations." It also explains that the DEA had "no discretion with respect to these amendments."

*Id.* § 481.034(a) (emphasis added); *see id.* § 481.035. In other words, the statute requires the Commissioner, except for *required* modifications under Subsection (g) to conform the state schedules with the federal schedules, to comply with the other subsections of Section 481.034, including making required findings under Section 481.035, for "any further additions to and deletions from these schedules." *See id.* § 481.034(a).

Among the other statutory requirements, Subsection (d) requires the Commissioner to consider eight factors when "making a determination regarding a substance," Subsection (e) requires the Commissioner to make findings as to those factors and the executive commissioner to adopt a rule controlling the substance if the Commissioner finds the substance has a potential for abuse, and Subsection (h) requires the Commissioner to provide written notice to the director and state licensing agencies having jurisdiction over practitioners. *See id.* § 481.034(d) (stating that commissioner "shall consider" listed factors), (e) (stating that commissioner "shall make findings with respect to those factors" and that executive commissioner "shall adopt a rule controlling the substance"), (h) (requiring commissioner to give written notice when commissioner designates, deletes, or reschedules substance under Subsection (a) to director and state licensing agencies); *see also* Tex. Gov't Code § 311.016(2), (5); *Southwestern Bell Tel. Co.*, 92 S.W.3d at 442; *Wilkins*, 47 S.W.3d at 494.

We also observe that appellees supported their ultra vires allegations with evidence. *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635 (stating that trial court's review of evidence in plea-to-the-jurisdiction context mirrors that of traditional summary judgment review and that if fact issue exists, plea should be denied). For example, the executive director of the Texas Hemp Foundation testified that the Commissioner "should've posted in the Texas Register directly that we're going to have a hearing on a decision to reschedule legal

21

hemp-derived Delta-8 [THC] onto the controlled substances list and didn't. They failed to do that." *See Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (stating that state official with "some discretion to interpret and apply law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself" (quoting *Houston Belt & Terminal Ry.*, 487 S.W.3d at 158)).

At this stage of the case, our inquiry concerns the trial court's jurisdiction and not the merits of the parties' disputes. Construing the pleadings liberally in favor of appellees and reviewing the evidence in the light most favorable to them, we conclude that the trial court did not err in denying appellants' plea to the jurisdiction as to appellees' ultra vires claim. *See Mission Consol. Indep. Sch. Dist.*, 372 S.W.3d at 635; *Miranda*, 133 S.W.3d at 226.

*APA Claim*

As part of their first issue, the Department and the Commissioner also challenge the trial court's jurisdiction over appellees' rule challenge brought under the APA. *See generally* Tex. Gov't Code §§ 2001.021–.038. Appellants argue that the "challenged actions by the Commissioner are not subject to a rule challenge under the APA" or the APA's procedural requirements, that the schedules "have the force of legislative action," that the October 2021 statement on the Department's website is valid and not a rule because the statement is correct information that "combats misinformation," and that the posted statement has no legal effect because "nobody can be charged with or convicted of violating the statement, and the statement cannot be otherwise enforced."

Appellees' APA claim is asserted against the Department. *See id.* § 2001.038(c) (requiring state agency to be made party to action); *Holt v. Texas Dep't of Ins.—Div. of*

22

*Workers' Comp.*, No. 03-17-00758-CV, 2018 Tex. App. LEXIS 10555, at \*3 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.) (same). Appellees' APA claim against the Department invokes the trial court's "subject matter jurisdiction if appellees have challenged the 'validity' or 'applicability' of a rule under the APA and they allege that the 'rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.'" *Texas Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 702 (Tex. App.—Austin 2011, no pet.) (quoting Tex. Gov't Code § 2001.038(a)). "Determining whether appellees have done so" "does not require us to delve into the merits of the claims." *Id.* (citing *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 903 (Tex. App.—Austin 2009, no pet.)); *see also Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 720 (Tex. App.—Austin 2009, no pet.) ("[T]he APA declaratory-judgment vehicle of section 2001.038 is a legislative grant of subject-matter jurisdiction.").

The jurisdictional inquiry concerns whether the Department's challenged statement and modifications to the 2021 schedule constitute a rule under the APA and, if so, whether the rule or its threatened application interferes with or impairs appellees' legal rights or privileges. *See Entertainment Publ'ns*, 292 S.W.3d at 720. A rule is defined under the APA as "a state agency statement of general applicability" that "implements, interprets, or proscribes law or policy" or "describes the procedure or practice requirements of a state agency," but the definition "does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures." Tex. Gov't Code § 2001.003(6)(A). "'[T]he core concept' in distinguishing between an agency statement that concerns only 'internal management' and a 'rule' is whether the agency statement has 'a binding effect on private parties.'" *See Texas Tel. Ass'n v. Public Util. Comm'n of Tex.*, 653 S.W.3d 227,

266 (Tex. App.—Austin 2022, no pet.) (quoting *Texas State Bd. of Pharmacy v. Witcher*, 447 S.W.3d 520, 529 (Tex. App.—Austin 2014, pet. denied)). "[T]o constitute a 'rule' under [the APA] definition, 'an agency statement interpreting law must bind the agency *or otherwise represent its authoritative position in matters that impact personal rights*.'" *Id.* "When an agency promulgates a rule without complying with the proper rule-making procedures, the rule is invalid." *El Paso Hosp. Dist. v. Texas Health & Human Servs. Comm'n*, 247 S.W.3d 709, 715 (Tex. 2008) (citing Tex. Gov't Code § 2001.035).

Here, the Department does not contend that it complied with the APA's rule-making procedures when it modified the 2021 schedules or posted the statement in October 2021 on its website that delta-8 THC was a Schedule I controlled substance. *See* Tex. Gov't Code §§ 2001.021–.041 (setting out procedures for state agencies to adopt rules); *see id.* § 2001.035 (stating that rule is voidable unless state agency adopts it in substantial compliance with Sections 2001.0225 through 2001.034). The Department instead contends that the trial court does not have jurisdiction over appellees' APA claim on the grounds that the publication of schedules and the October statement on its website were not rules and that the Commissioner is required to comply with Sections 481.034 and 481.035 of the TCSA when amending schedules, instead of the procedural rulemaking requirements of the APA. *See* Tex. Health & Safety Code § 481.032(a) (stating that commissioner "shall establish and modify the following schedules of controlled substances *under this subchapter*" (emphasis added)).

But Section 481.034(e) expressly requires the executive commissioner to adopt a rule controlling a substance that the commissioner has found has a potential for abuse after considering the statutory factors. *See id.* § 481.034(e) (stating that executive commissioner "shall adopt a rule controlling the substance" when commissioner "finds the substance has a

24

potential for abuse"). Thus, the legislature expressly contemplated that rulemaking would occur to adopt a rule controlling a substance. *Id.*

In its temporary injunction order, the trial court found that appellees had asserted a valid claim under the APA based on the Department's statement on its website "wherein [the Department] proclaims that Delta-8 in any concentration is considered a Schedule I controlled substance." Consistent with the trial court's finding, we need go no further than to observe that the Department's statement prescribes law, is generally applicable to the public at large, does not pertain to the Department's internal management, and impacts personal rights, including appellees' alleged rights. *See* Tex. Gov't Code § 2001.003(6)(A); *Texas Tel. Ass'n*, 653 S.W.3d at 266; *Entertainment Publ'ns*, 292 S.W.3d at 720; *see also* Tex. Health & Safety Code § 443.001(1) (defining "consumable hemp product" to mean "food, a drug, a device, or a cosmetic, as those terms are defined by Section 431.002, that contains hemp or one or more hemp-derived cannabinoids, including cannabidiol"). This statement represents the Department's authoritative position on a matter that, according to appellees' pleadings and evidence, threatens to interfere with or impair appellees' legal rights or privileges. *See Texas Tel. Ass'n*, 653 S.W.3d at 266. Appellees' evidence also showed the ongoing impact of the Department's modifications to the schedules and posted statement on the businesses selling products with delta-8 THC derived from hemp, including loss of customers, market share, and revenue, and on the loss of treatment for individuals suffering from certain health conditions.

Viewing the pleadings and evidence under the applicable standards of review, we conclude that the trial court did not err in concluding that it had jurisdiction over appellees' APA claim against the Department. *See* Tex. Gov't Code § 2001.038; *see also Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 620–23 (Tex. App.—Austin 2014, pet. denied) (concluding that

25

Texas Medical Board's pronouncements in letter was rule); *Entertainment Publ'ns*, 292 S.W.3d at 720–23 (concluding in context of challenge to trial court's jurisdiction that statements in letters from Comptroller constituted rule). Thus, we conclude that the trial court did not err when it denied the plea to the jurisdiction as to appellees' APA claim.

Having concluded that the trial court did not err when it denied the plea to the jurisdiction as to appellees' ultra vires and APA claims, we overrule the Department and the Commissioner's first issue.

**Temporary Injunction**

In their second issue, the Department and the Commissioner challenge the trial court's temporary injunction.

*Standard of Review and Applicable Law*

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). To obtain a temporary injunction, an applicant must plead and prove three elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) "a probable, imminent, and irreparable injury in the interim." *Id.* "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Id.* "A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Id.*; *see Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet). The "status quo" is defined as "the last, actual, peaceable, non-contested status [that] preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding).

26

A trial court has broad discretion in deciding whether to grant or deny a temporary injunction, and its ruling is subject to reversal only for a clear abuse of that discretion. *See Butnaru*, 84 S.W.3d at 204; *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and "determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion." *Thompson*, 24 S.W.3d at 576; *see Butnaru*, 84 S.W.3d at 204 (stating that appellate court may not substitute its judgment for that of trial court "unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion"). A trial court does not abuse its discretion if some evidence reasonably supports its decision. *See Thompson*, 24 S.W.3d at 576.

*Did the trial court abuse its discretion when it granted the temporary injunction?*

Among their challenges to the trial court's temporary injunction, the Department and the Commissioner argue that the trial court's temporary injunction was improper as a matter of law because it enjoined the effectiveness of the modifications to the state schedules of controlled substances going forward. They argue that courts must enjoin parties, not laws, and that "[t]he trial court cannot ask [appellants] to change the law." This Court, however, has affirmed analogous temporary injunctive relief. *See Crown Distrib.*, 2021 Tex. App. LEXIS 6283, at *21 (affirming temporary injunction in part that enjoined Department from enforcing rule); *Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 653–54 (Tex. App.—Austin 1999, writ dism'd w.o.j.) (affirming temporary injunction enjoining agencies from relying on memorandum from state agency defining illegal

27

"gambling devices" as that term was used in statute). Thus, we conclude that the relief granted in the temporary injunction was not improper as a matter of law.

The Department and the Commissioner also contend that appellees "failed to establish any of the three required elements necessary to obtain a temporary injunction." As to the first two elements, they rely on their position that the trial court did not have jurisdiction over appellees' claims. In addition to its finding as to appellees' APA claim stated above, the trial court made the following finding as to the first and second elements to support its temporary injunction:

> 1.      [Appellees] have asserted a valid ultra vires claim against [the Commissioner] for declaratory and injunctive relief for [her] amendments to the definitions for the terms "tetrahydrocannabinols" and "Marihuana extract" as reflected in the 2021 Department of State Health Services' Schedule of Controlled Substances.
>
> . . . .
>
> 3.      [Appellees] have shown a probable right to declaratory and injunctive relief because [the Commissioner's] action amending the definitions failed to meet the requirements found in § 481.034 of the Texas Health & Safety Code, and [the Department]'s rule as stated on its website concerning Delta-8 failed to comply with the rule making requirements found in the APA.

As discussed above, we similarly have concluded that appellees pleaded valid claims against the Department and Commissioner and, based on our review of the evidence as stated above, we conclude that appellees presented some evidence of a probable right to relief. *See Thompson*, 24 S.W.3d at 576 (stating that trial court does not abuse its discretion if some evidence reasonably supports its decision).

As to the third element to support its temporary injunction—probable, imminent, and irreparable injury in the interim—the trial court found:

28

4.      As a result of [the Commissioner's] ultra vires actions and [the Department's] APA violations, [appellees] will suffer imminent and irreparable harm such as brand erosion, reputational damage, including loss of customers' goodwill, unsalvageable loss of nationwide customers, loss of market share, loss of marketing techniques, employee force reduction, revenue lost and costs incurred by not being able to manufacture, process, distribute, or sell hemp products that fall within the newly adopted definitions for "tetrahydrocannabinol" and/ or "Marihuana extract," having to relocate or shut down part of [appellees'] businesses and contributing to the insolvency of [their] vendors and customers, and subjecting all of [appellees'] employees and similarly situated company employees and individual consumers to potential arrest and other criminal penalties. In addition, [individual appellees], along with other similarly situated individual consumers throughout Texas, will have no effective treatment to anxiety, depression, insomnia, migraines, loss of appetite, chronic pain, and nausea. [Appellees], along with these other individuals, may be forced to seek other dangerous alternatives, like opioids or street drugs.

5.      [Appellees] cannot be adequately compensated in damages because the damages are not quantifiable and there is no monetary relief that can be obtained from [the Department and Commissioner]. Such injuries would be compounded should [the Department and Commissioner] not be immediately restrained from their activities.

The Department and the Commissioner argue that the evidence showed that appellees who "began manufacturing, selling, or using delta-8 THC in 2019" "gambled on their own interpretation of the statute, not any interpretation put forth by [the Department] or the Commissioner." Appellees, however, presented evidence supporting the trial court's findings as to the third element for temporary injunctive relief. For example, as to evidence of harm to the businesses without injunctive relief in the interim, the retailer testified that he had been selling products containing delta-8 THC, which was over 50 percent of his business, but that he stopped doing so after receiving a letter from the City of Copperas Cove to cease selling the products. The chief financial officer of Sky Marketing testified similarly to its having a 50 percent decrease in revenue and lost customers after delta-8 THC was scheduled as a controlled

substance, having "reputational damages" that are "somewhat unrecoverable," likely having to lay off twenty-five people and five to six contractors, and not seeking to recover any damages.

Several witnesses also testified about harm to individuals in the interim without a temporary injunction. The director of government and public affairs for the Department of Texas Veterans of Foreign Wars testified about his authorization to testify on behalf of their 68,000 members and family about the impact of the Commissioner's actions and the cessation of the selling of products containing delta-8 THC derived from hemp. He testified that the products had been assisting individuals with a "variety of physical and mental health issues" and with avoiding or getting off of opioids. The owner of the manufacturing company and retail stores testified about his addiction to opioids and how CBD and delta-8 products had helped him. He testified that he had been "drug-free a hundred percent for eight years, with the exception [that he did] take Delta-8 at least three nights a week, four nights a week, which allows me to sleep through the night pain-free or minimal pain." The deputy state inspector testified that he was injured in combat; that he had PTSD, chronic migraines, and "lower back pain from all the surgeries"; that he was a consumer of delta-8 products "until a couple of weeks ago"; and that before he was using delta-8 products, he had been on a "myriad of drugs" prescribed to him that caused him to lose memory and that he had been addicted to opioids. He testified that the delta-8 products "[didn't] leave [him] in a fog like the medications did that [he] was on" and that "the CBD and the delta-8 products really worked well for [him]." He also testified that without the ability to purchase delta-8 products, his "pain is elevated, obviously." Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that there was some evidence to support the trial court's finding of probable, imminent, and irreparable injury in the interim. *See Thompson*, 24 S.W.3d at 576.

30

The Department and the Commissioner also challenge the trial court's temporary injunction on the grounds that (1) the status quo was in place in March 2021 when the schedules were published and that appellees did not file suit until seven months later and (2) the Commissioner's determination against classification of a controlled substance "requires deference" because the TCSA's purpose "is to protect the health and safety of the public." They rely on the possibility that a controlled substance may be abused, that it may not have medical value, and that it may lead to addiction. They also rely on exhibits before the trial court that contained governmental warnings about products containing delta-8 THC; the impact of the temporary injunction on the State's Compassionate Use Program with its "attendant safety regulations and protocols," *see generally* Tex. Health & Safety Code §§ 487.001–.256; and safety concerns for individuals who are self-medicating with delta-8 THC products.

The trial court, however, found that the temporary injunction would preserve the status quo prior to the Commissioner's ultra vires conduct and the Department's APA violation, that the harm to appellees if the temporary injunction was not granted outweighed any potential harm to the Department and the Commissioner by the issuance of the temporary injunction, and that granting the temporary injunction would benefit the public interest. *See Thompson,* 24 S.W.3d at 578 (stating that trial court may balance equities and resulting hardships from issuance or denial of temporary injunction); *Landry's Seafood Inn & Oyster Bar-Kemah, Inc. v. Wiggins*, 919 S.W.2d 924, 927 (Tex. App.—Houston [14th Dist.] 1996, no writ) (explaining that equitable principles apply to request for injunctive relief); *see also* Tex. Civ. Prac. & Rem. Code § 65.001 (stating that generally "principles governing courts of equity govern injunction proceedings"); *In re Gamble*, 71 S.W.3d 313, 317 (Tex. 2002) (orig. proceeding) ("A request for injunctive relief invokes a court's equity jurisdiction."). Although appellees did not file suit for

several months after the 2021 schedules were published, appellees presented evidence that they did not learn of the Department's position as to delta-8 THC until the Department posted the statement on its website, and appellees filed suit shortly after the posting.

Viewing the evidence in the light most favorable to the trial court's temporary injunction, we cannot conclude that the trial court abused its discretion in granting it. *See Butnaru*, 84 S.W.3d at 204; *Thompson*, 24 S.W.3d at 576. Accordingly, we overrule the Department and the Commissioner's second issue.[9]

## CONCLUSION

For these reasons, we affirm the trial court's orders denying appellants' plea to the jurisdiction and granting a temporary injunction.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed: September 28, 2023

---

[9] The Department and Commissioner argue that appellees remain in the same position as they did before the temporary injunction was granted because of the DEA's position concerning THC in hemp. We expressly do not address this argument, which goes to the merits of the parties' dispute.